[Civ. No. 50732. Second Dist., Div. Two. Jan. 4, 1978.]

HILL SAYBLE et al., Plaintiffs and Appellants, v.
FRANCES FEINMAN, Defendant and Respondent.

510

COUNSEL

Memel, Jacobs, Pierno & Gersh and Stanley K. Jacobs for Plaintiffs and Appellants.

Tannenbaum, Neiman & Billet and Paul L. Stanton for Defendant and Respondent.

OPINION

**BEACH, J.**—Hill Sayble and Sayble and Raphael, a professional corporation, appeal from a judgment in favor of Frances Feinman construing the terms of payment in a contingent fee retainer agreement between appellant attorneys and respondent client.

FACTS:

Respondent Frances Feinman retained appellant attorneys to represent her claims arising out of the wrongful death of her husband. The parties entered into an attorney retainer agreement drafted by appellants. The contract provides in relevant part: "Attorney(s) shall be paid 28⅓% of *any money recovered* in this matter . . . ." (Italics added.)

Appellants and respondent agree that at the time of the making of the contract, neither party contemplated a settlement other than a lump sum of cash. Appellants achieved an out-of-court settlement for respondent with a cash payment of $200,000, plus an annuity of $2,500 per month for her lifetime. Respondent's life expectancy at the time of settlement was 46.7 years.

Prior to the acceptance of the settlement in the wrongful death action, a dispute arose between the parties as to the amount and method of payment of attorneys' fees. Appellants contend that they were entitled immediately to their entire fee as a lump sum of 28⅓ percent of the $200,000 paid to respondent in cash plus 28⅓ percent of the present cash value of the annuity portion of the settlement. Respondent agreed that appellants were entitled to 28⅓ percent of the $200,000; but she maintained they were entitled to 28⅓ percent of the annuity only as she received the funds in each monthly installment.

Pursuant to respondent's authorization and direction, the settlement of the original action was consummated without the resolution of the dispute. The parties were subsequently unable to resolve their dispute, and appellants commenced a declaratory relief action seeking the court's interpretation of the retainer contract and a declaration of the rights and duties of the parties under that agreement. The trial was bifurcated to permit the court to construe the retainer agreement as a matter of law without the presentation of evidence. The matter was submitted on the facts admitted by the pleadings and the stipulation of facts.

The court entered judgment in favor of respondent's interpretation of the contract and concluded as a matter of law that appellants were entitled to be paid 28⅓ percent of the settlement funds received to date by respondent, plus 28⅓ percent of each monthly payment of the life annuity portion of the settlement, as and when received by her and not before. This appeal followed.

### CONTENTIONS ON APPEAL:

1. The trial court's findings and decision are not binding on the question of law presented.

2. The trial court misconstrued how the contingent fee retainer contract is to be applied to the annuity portion of the wrongful death settlement. Appellants contend that they have earned all their fees and are now entitled to receive 28⅓ percent of the present cash value of the annuity portion of the settlement in addition to the 28⅓ percent of all funds received to date.

### DISCUSSION:

*1. The findings of the lower court are not binding on the question of law presented.*

■ The construction of a written contract is essentially a judicial function to be exercised according to generally accepted canons of interpretation. A reviewing court is free to adopt its own construction of a contractual clause on attorneys' fees, resolving any uncertainties in favor of a fair and reasonable interpretation. (*Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.,* 1 Cal.3d 266, 272 [81 Cal.Rptr. 849, 461 P.2d 33].) But an appellate court must determine that the trial court's interpretation of a written contract is erroneous before it may properly

reverse a judgment. (*Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].)

2. ██ *The court below properly interpreted the phrase "any money recovered" as it applies to respondent's life annuity.*

Here we are called upon to construe a provision of an attorney's contingent fee employment contract. The parties stipulated that when the contract was made, neither one considered a settlement other than by a lump sum of cash. Neither party contends that the contract is ambiguous or that it has been modified.

Nevertheless, appellants contend that unforeseen contingencies, such as the life annuity portion of respondent's settlement, are to be handled in light of the purpose of the contract and the mutual intentions of the parties at the time the contract was made. Appellants argue that their expectations resulting from such a "mutual intention" entitled them to receive immediately 28⅓ percent of the discounted present cash value of respondent's life annuity once the settlement became final. They argue that the trial court's interpretation of the retainer agreement was clearly erroneous and contrary to basic contract law in holding that they are entitled only to 28⅓ percent of the monthly payments as and when paid to respondent and not before. For the reasons that follow, we disagree with appellants and affirm the trial court's judgment.

The general rules pertaining to the interpretation of contracts have been succinctly summarized elsewhere (see *Moss Dev. Co.* v. *Geary*, 41 Cal.App.3d 1, 9 [115 Cal.Rptr. 736]) and need not be repeated here. Whether the meaning of the phrase "28⅓% of any money recovered" is clear and precise or is ambiguous and uncertain does not alter the result in the case at bench. If the meaning is clear, the language of the contract will be followed. (Civ. Code, § 1638.) ██ Moreover, where one construction would make a contract unusual and extraordinary and another construction, equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail. (*Rost* v. *Bryson*, 118 Cal.App.2d 489 [258 P.2d 72].)

We look to the contract itself and interpret it so as to give effect to the intent of the parties. (Civ. Code, §§ 1639, 1643; *Advance Medical Diagnostic Laboratories* v. *County of Los Angeles*, 58 Cal.App.3d 263, 269 [129 Cal.Rptr. 723].) But the parties herein stipulated that when the contract was made, they contemplated only a lump sum settlement.

Consequently, it is uncertain what would have been the reasonable intentions of the parties had they anticipated that part of the settlement would be a life annuity. In such circumstances, the words of the contract are to be understood in their ordinary and popular sense, rather than in their strict legal meaning unless there is evidence the parties intended to use them in a technical sense or to give them a special meaning. (Civ. Code, § 1644; *Berman* v. *Dean Witter & Co., Inc.,* 44 Cal.App.3d 999 [119 Cal.Rptr. 130].)

"Money," in the ordinary and popular sense, means something generally accepted as a circulating medium of exchange issued under governmental authority.[1] Appellants' stipulation that their only expectation was that the settlement would be a "lump sum of cash" indicates they used the word money in the retainer contract in its ordinary sense. This is consistent with respondent's position that the right to be paid from an annuity, or even the present value of that right is not "money recovered."

In California, " 'Money' means a medium of exchange authorized or adopted by a domestic or foreign government as a part of its currency." (Cal.U.Com. Code, § 1201, adopting U.C.C. § 1201.) The Uniform Commercial Code comment 24 to section 1201 states: "The test adopted is that of sanction of government . . . which recognizes the circulating medium as a part of the official currency of that government." Likewise, "Money, checks, deposit accounts, and the like are 'cash proceeds.' All other proceeds are 'noncash proceeds.' " (Cal.U.Com. Code, § 9306.) This sharp distinction between money and other forms of personal property is also apparent in Code of Civil Procedure section 17.[2]

In the instant case, respondent does not, in fact, recover any *money* from her annuity until she actually receives each monthly payment. The life annuity is a promise of future payments which may or may not occur. Respondent properly contends that had appellants provided in their own contract that their fee would be 28⅓ percent of "the recovery," or "the full recovery," or "the value of the entire recovery," or "the

---

[1]The Random House Dictionary of the English Language defines money as: "1. gold, silver, or other metal in pieces of convenient form stamped by public authority and issued as a medium of exchange and measure of value. 2. See *paper money.*" Black's Law Dictionary (4th ed.) defines money as: "In usual and ordinary acceptation it means gold, silver, or paper money used as circulating medium of exchange, and *does not embrace* notes, bonds, evidences of debt, or *other personal or real estate.*" (Italics added.)

[2]Code of Civil Procedure section 17 states in pertinent part: "The words 'personal property' include money, goods, chattels, things in action, and evidences of debt."

amount realized," then their argument might be persuasive. However, appellants did not use such language in drafting their retainer agreement, and they cannot now alter that phrase to include what they claim they meant to say specifically to apply to a situation they were more qualified to anticipate than the client they, in their fiduciary capacity, undertook to serve and protect.

■ This court has neither the power to make for the parties a contractual arrangement which they themselves did not make nor to insert in the agreement language that appellants now wish were there. (Code Civ. Proc., § 1858; *Pauley* v. *Faucett,* 124 Cal.App.2d 406 [269 P.2d 89].)

■ If anything prevented the immediate payment of all attorneys' fees as soon as the settlement became final, it was appellants' failure specifically to express that intention in the contract. Respondent has and continues to fulfill her obligation to pay attorneys' fees according to the unambiguous terms of the contract. Therefore, under the hypothesis that the meaning of the phrase "28⅓% of any money recovered" is clear and certain, the interpretation of respondent and the court below is correct.

Since appellants prepared this contract and in light of the oppressive nature of their interpretation of the clause at issue even if it can be argued the contract is ambiguous, we resolve any uncertainties in favor of a fair and reasonable interpretation and against the inflexible construction urged by appellants. (*Ecco-Phoenix Electric Corp.* v. *Howard J. White Inc., supra,* 1 Cal.3d 266, 272.)

We also note that appellants have already received fees in excess of $56,000 (28⅓ percent of the $200,000 lump sum) plus 28⅓ percent of each monthly annuity payment received to date by respondent pursuant to that portion of the settlement. There is every indication respondent will continue to fulfill her contractual obligation hereafter. To agree with appellants would be to hold that they are entitled immediately to some 80 percent of the money recovered thus far. Such an interpretation of a contingent fee contract would be unreasonable and absurd. (Civ. Code, §§ 1638, 1643.)

We need not address the essentially impossible task of rewriting this contract to reflect what the parties might have said had they anticipated the problem of how a contingent fee contract is to be applied to a tort recovery part of which is to be paid in installments as an annuity. (Code

Civ. Proc., § 1858; *Milstein* v. *Security Pac. Nat. Bank,* 27 Cal.App.3d 482, 487 [103 Cal.Rptr. 16].) We conclude that the trial court's interpretation of the disputed phrase, "money recovered," was proper.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied January 19, 1978, and appellants' petition for a hearing by the Supreme Court was denied March 2, 1978.