IN THE MATTER OF THE PROTECTION OF THE PROPERTY OF MARLENE CHOW, Protected Person, A Minor

NO. 8060

(G. NO. 1286)

DECEMBER 29, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Appellant Wilfred H. Humphries (Humphries) appeals from the order of the court below dated July 15, 1980, awarding him attorney's fees. Appellees are Marlene Chow (Marlene),[1] a protected person, and Jun Chow and Molly Chow (the Chows), her parents. Molly Chow (Molly) is also the duly appointed and certified guardian of the estate of Marlene Chow (Estate).

The appeal raises the following issues:

1. Did the probate court in the guardianship proceedings have jurisdiction to determine attorney's fees relating to the Chows' share of the settlement?

2. Did the court abuse its discretion in its method of awarding attorney's fees to Humphries?.

3. Did the court abuse its discretion in not awarding Humphries' all of his fees for Marlene's recovery out of the lump sum settlement?

We answer the first question yes and the last two questions no.

On September 15, 1975, Humphries, as attorney for the Chows and Marlene, filed a tort action (Civil No. 46178) against several defendants seeking to recover damages arising from injuries to Marlene due to medical malpractice. In that action, Marlene sought general, special and punitive damages. The Chows sought reim-

---

[1] Although the court appointed an attorney to represent Marlene in the proceedings below, no brief has been filed on her behalf. At argument, Humphries noted that such failure indicated no opposition to part of his appeal. In response, the Chows' counsel claimed the Chows' interest and Marlene's were the same. We do not agree with the Chows; however, in our view of the case, the omission is not fatal to Marlene's interest.

bursement of expenses for Marlene's care and treatment and future medical expenses; loss of future income (it is not clear whose income); and compensation for mental and emotional anguish. On May 11, 1977, Humphries, the Chows, and Molly Chow on behalf of Marlene entered into a written retainer agreement, under which Humphries was to be paid 33⅓% of any settlement obtained prior to suit, 40% of any settlement, verdict, or recovery after institution of any suit, and 50% of any settlement or recovery after filing of notice of appeal. The Chows and Molly on behalf of Marlene agreed to pay all costs and advances made by Humphries in prosecuting the claim.

On October 17, 1978, Humphries, on behalf of the Chows and Marlene, petitioned the probate court for appointment of Molly Chow as guardian of the property of Marlene and for authority to compromise the malpractice claim against some of the defendants in the civil action. The petition indicated that the settlement offer was for $45,000, and prayed that the offered amount be apportioned 30% to the Chows and 70% to Marlene.[2] On November 8, 1978, the court entered an order appointing Molly Chow guardian and authorized her to settle the claim for $31,500 (70% of $45,000). Out of the $31,500, Humphries was allowed attorney's fees of $10,500 (⅓ of $31,500) and reimbursement for costs of $987.34; the Chows were reimbursed $15,050 for expenses on Marlene's behalf; and Dennis W. Potts, Esq. (Potts), was awarded $75.00 attorney's fees. The balance of $4,887.66 was ordered to be used to defray future costs in Civil No. 46178. The court did not award fees to Humphries from the Chows' portion of the settlement (30% of $45,000 or $13,500)[3] or the reimbursement of $15,050.

Later, the remaining defendants offered to pay a lump sum of $100,000 and an annuity of $650 a month to the Estate, commencing when Marlene became 19½ years of age.[4] Hum-

---

[2] On the same day, the court appointed Dennis W. Potts, Esq., to represent Marlene. On June 14, 1979 after the dispute with the Chows arose, Potts was again appointed as attorney for Marlene.

[3] The record indicates the Chows paid Humphries $5,400 (40%) as his fee and the balance was deposited with him as a fund for payment of future costs. (R. 63)

[4] The settlement offer was apparently oral and is not in the record. However, the record indicates that Humphries and his co-counsel L. Richard Fried, Esq., con-

phries and the Chows, however, disagreed as to how the attorney's fees would be paid: Humphries demanding payment in full out of the lump sum; and the Chows and Molly insisting that he be paid 33⅓% of the lump sum payment and 33⅓% of the monthly annuity payments.

On November 8, 1979, Humphries filed a Motion For Determination of Allocation of Settlement; Determination of Attorney's Fees; and Approval of Compromise of Minor's Claim, noting the disagreement over attorney's fees. Before the court could act on the motion, however, a further medical complication was discovered in Marlene's condition. At a hearing on the matter held on September 28, 1979, the court orally appointed Gary Hagerman, Esq., "to represent the parents," but no written order was ever entered. The Chows were already represented by the firm of Pyun and Hioki, replacing Humphries. Review of the transcript indicates clearly that Hagerman's role was to negotiate further settlement for the Estate. The compromise was disallowed by order entered on October 15, 1979. The $100,000 had already been paid, however, and Potts was ordered to hold the money in trust. Humphries was subsequently ordered to turn over all funds he had on hand to Potts.

On January 22, 1980, Humphries filed a Notice of Attorney's Lien for his fees.

A new settlement proposal was negotiated and on March 6, 1980, Potts filed an "Amended Motion For Approval Of Compromise Of Minor's Claim and Determination Of Allocation Of Proceeds." There is no written offer in the record, but the new settlement again contemplated that the entire payment was to go to the Estate. The defendants in Civil No. 46178 were not paying anything to the Chows. The affidavit attached to the motion states:

8. On March 4, 1980 a settlement of said minor's claim was tentatively agreed upon by all parties, including your affiant [Potts], which provided for a lump sum payment of $150,000 to said minor while leaving the terms and conditions of her life

---

sidered that the offer did not include any recovery for the Chows. In order to persuade the Chows to accept the offer, Fried offered to pay $20,000 of his fee to the Chows.

time annuity as described in paragraph 4 hereinabove intact. The annuity remained the same as in the first proposal. No request was made for allocation of the proceeds, but Potts did indicate he felt that the attorneys' fees should be made from the lump sum.[5]

On March 25, 1980, the Chows filed a memorandum addressing apportionment and requested reimbursement from the Estate of monies they had advanced through Humphries to cover the legal costs of Civil No. 46178 in the amount of $30,582.22. On April 29, 1980, the court approved the compromise and continued until a later date the matter of allocation of proceeds and attorney's fees. On June 9, 1980, the Chows filed a memorandum requesting reimbursement of $6,187.82 as medical expenses they had paid for Marlene. Neither Marlene's lawyer nor Humphries has questioned, here or in the court below, the amounts requested by the Chows as legal costs advanced by them or medical expenses. The Chows contended in their memoranda that they should not be assessed attorneys' fees out of their reimbursement because of the problems they encountered in Civil No. 46178: necessity of retaining new counsel; the discovery of Marlene's further physical complication; and their continuing duty to provide medical care for Marlene.

The court held a final hearing on May 2, 1980, and made an oral ruling. Before any written order was filed, Humphries moved for reconsideration of the ruling. His motion was denied and the written order was entered on July 16, 1980.

The order approved the $150,000 lump sum payment and the annuity payments. Out of the lump sum, the court ordered the following payments: $6,187.82 to the Chows as reimbursement for medical costs; $30,582.22 as reimbursement for legal costs; and $5,000 to Hagerman as attorney's fees.

As his attorney's fees "for all of his services rendered in Civil No. 46178 on behalf of all of the Plaintiffs therein", the court ordered $36,076.65[6] paid to Humphries from the lump sum. This repre-

---

[5] Potts later reversed himself on the matter of the fees and argued that Humphries should be paid 33⅓% of the lump sum and 33⅓% of each annuity payment.

[6] Humphries' payment was also subject to a sum of $20,000 already advanced to him from the estate funds held by Potts under an order for partial payment, and $16,000 awarded to L. Richard Fried, Esq., Humphries' co-counsel.

sented one-third of the balance of the $150,000 after deducting the medical and legal expenses and Hagerman's fee. In addition, the court order stated, "Further, for all of his services rendered in Civil No. 46178 on behalf of all the Plaintiffs therein, Wilfred H. Humphries shall also be awarded one-third of said annuity settlement only as each monthly payment is received by Protected Person and Minor MARLENE CHOW during her lifetime. In the event Wilfred H. Humphries predeceases said Protected Person and Minor, said payments shall be made in the manner aforementioned to the estate of Wilfred H. Humphries".

1.
### JURISDICTION OF PROBATE COURT

Humphries argues that the probate court had jurisdiction only to determine and award attorney's fees to be paid out of the guardianship estate, and that the proper court to determine fees in the civil action for the Chows was the court to which the civil case was assigned. We disagree.

We recently held that the state circuit courts are courts of general jurisdiction and that jurisdiction extends to all matters properly brought before them, unless precluded by constitution or statute. *In re Keamo*, 3 Haw. App. 360, 650 P.2d 1365 (1982). All the matters of the guardianship, settlement of the civil action, allocation of the proceeds, and attorneys' fees were within the subject matter jurisdiction of the circuit court sitting in probate. In filing his motions for allocation of proceeds and payment of fees and his charging lien and participating in all hearings before the court, Humphries subjected himself and all other parties properly appearing to the personal jurisdiction of the court. *See State v. Hawaiian Dredging Co.*, 48 Haw. 152, 397 P.2d 593 (1964).

Hawaii Revised Statutes § 671-2 (1976) is cited by Humphries as support for the reasonableness of the contingent rates of the contract and his argument that the dispute should have been decided by the "civil" court. Neither HRS § 671-2 (1976) nor the amendment of 1977, Session Laws 1977, c. 167, § 3,[7] supports his argument. Hum-

---

[7] At the time the agreement was signed on April 11, 1977, § 671-2 read:

[§ 671-2] *Attorney's contingent fees arrangements.* In any action for medical tort in which the plaintiff's attorney and the plaintiff agree that the attorney is to be

phries was discharged prior to the final settlement of the claim and the contract was at an end. Thereafter, his fees were within the sound discretion of the court. *Booker v. Midpac Lumber Co.*, 65 Haw. 166, 649 P.2d 376 (1982). The statute does not limit the probate court's jurisdiction. *In re Keamo, supra.*

### AWARD OF ATTORNEY'S FEES

Humphries uses a two-pronged argument regarding attorney's fees. First, he argues that the method used by the court in awarding the fees deprives him of a fee for the Chows' recovery and burdens Marlene's settlement with the Chows' attorney's fee. Second, he argues that the court should have awarded his fees entirely out of the lump sum award and not partly out of the annuity payments.

---

paid a fee only if the plaintiff recovers damages, payment to the attorney shall be limited to an amount not in excess of:

> (1) Thirty-three and one-third per cent of the amount recovered if the claim is settled prior to the filing of the statement of readiness for trial; or
> (2) Forty per cent of any amount recovered after the statement of readiness for trial is filed to the time judgment is rendered by the trial court.

Such limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment.

On June 4, 1977, the statute was amended to read:

> [§ 671-2] *Attorney's contingent fees arrangements.* (a) In any action for medical tort in which the plaintiff's attorney and the plaintiff agree that the attorney is to be paid a fee only if the plaintiff recovers damages, payment to the attorney shall be limited to a reasonable amount as approved by a court of competent jurisdiction.
> (b) If the plaintiff recovers damages as a result of settlement or arbitration award without the initiation of court action, the plaintiff's attorney shall submit the amount of his fee to the circuit court which would have had jurisdiction of the action or the circuit court of the circuit in which the plaintiff resides for approval.
> (c) If the plaintiff recovers damages as a result of settlement, arbitration award or judgment after court action has been initiated, the plaintiff's attorney shall submit the amount of his fee to the court having jurisdiction of the action.
> (d) Upon receiving a submission for approval of attorney's fees, the court shall approve the fee or so much thereof as it finds to be reasonable. . . . L 1977, c. 167, § 3

Humphries argues that the amendment should not be applied here because the agreement was signed prior to its enactment. The Chows argue the amendment is applicable because the settlement took place after its enactment. *Cf., In re Christian,* 65 Haw. ____, 652 P.2d 1137 (1982), where our supreme court said no law has retrospective operation unless so expressed or obviously intended. As noted above, it is not necessary for us to address this question.

2.

## FEES FROM THE CHOW'S REIMBURSEMENT

Humphries argues that the money allocated to the Chows as recovery of their medical and legal costs resulted from his efforts under the retainer agreement and he is entitled under the contract to 40% of the Chows' $36,770.04, or $14,708.02. He argues that the failure of the court to award him any fee based on that recovery was an abuse of discretion. As we have noted, the retainer agreement was not in effect at the time of the final settlement.

The Chows argue that the original settlement obtained by Humphries did not provide for any recovery by them. They contend that, since Humphries was discharged prior to the final settlement, he in fact did not obtain any recovery for the Chows, and he is not entitled to any fee from them. The Chows also argue that contingency fees are not payable out of a plaintiff's recovery of medical and legal expenses.

In this jurisdiction, the award of attorney's fees is within the discretion of the trial court and the exercise thereof will not be disturbed upon appellate review except for abuse. *Booker v. Midpac Lumber Co., supra.* Where an attorney employed under a contingent fee contract is discharged prior to the occurrence of the contingency, the contract is terminated. The attorney is, however, entitled to a reasonable attorney's fee based upon a consideration of all relevant factors. *Id.* 649 P.2d at 379. Some of the relevant factors to be considered are: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 244, 413

P.2d 242, 245 (1966). These considerations are "guides" to determining the value of the services and the court is not required to consider each of them in every case. *Id.* at 245, 413 P.2d at 246. In *Booker, supra,* our supreme court also said that where the efforts of an attorney employed under a contingency fee contract would have a tendency to advance the client's claim or to enhance the possibility of a favorable result, the contract and the reasonably estimated value of the case should be considered in fixing a reasonable attorney's fee, and a reasonable attorney's fee is one which is fair to both attorney and client. *Id.,* 649 P.2d at 381.

Unfortunately, the court below did not make any findings with regard to Humphries' right to fees from the amount reimbursed to the Chows. However, it is clear that the court intended to fully reimburse the Chows for their out-of-pocket medical and legal expenses, and to limit Humphries to one-third of the balance after that reimbursement and deduction of the awards of fees to the other attorneys (except Potts).

As we have noted, there is no specific provision in any of the settlement offers allocating any portion of the lump sum settlement to the Chows' claims. The matter was presented to the court for its determination. We interpret the court's action as follows:

1. The entire settlement was the Estate's;

2. The Chows were recovering nothing from the tortfeasors;

3. The Chows had a legitimate claim against the Estate for their out-of-pocket expenses;

4. The Chows should be reimbursed by the Estate;

5. Humphries did not recover the Chows' out-of-pocket expenses from the tortfeasors;

6. The reimbursement, being due from Marlene, should not be subject to attorney's fees;

7. Humphries was entitled to attorney's fees for Marlene's recovery;

8. Humphries' fee should come from the balance after expenses and fees.[8]

---

[8] We are aware that in this jurisdiction there are essentially two ways in which attorneys calculate contingency fees where a lump sum is recovered. Some attorneys will calculate their fees based on the total recovery; other attorneys will reimburse the clients for medical and legal expenses and calculate their fees on the balance of the recovery.

9. The fee should be in settlement of all Humphries' claims.

Discretion denotes the absence of a hard and fast rule. When invoked as a guide to judicial action it means a sound discretion, exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. *Booker v. Midpac Lumber Co., Ltd., supra.*

We do not deem the lower court's approach to be unreasonable in the posture of the settlement and reimbursement to the Chows and hold the court did not abuse its discretion in this matter. The monies reimbursed to the Chows were merely funds turned over to Humphries to pursue the Estate's claim. The Estate was morally bound in good conscience to reimburse those funds.

3.

### FEES FROM MARLENE'S RECOVERY

Although Humphries has voluntarily limited his claimed fee from Marlene's recovery to 33⅓%, he contends that he should have been awarded a further fee of $50,000, being one-third of the present cash value of the annuity of $150,000,[9] out of the lump sum. The only question is whether it was an abuse of discretion for the court to provide that Humphries was to receive a portion of each annuity payment. We hold it was not.

Humphries argues that the order subjects him to the risk that, should Marlene's life span in reality be shorter than the life expectancy on which the annuity is based, his fees would be an inordinately small amount. He argues, further that to recover the additional $50,000 he has earned, he and Marlene have to survive until the year 2002 when he would be 86 years old. He asserts that either contingency is problematical and thus fairness requires an award of the additional $50,000 out of the lump sum settlement. This would

---

[9] Humphries presented an expert witness who testified that the present cash value would range from $150,000 to $250,000; however, he seeks a fee based only on the lower estimate. This testimony was introduced at a hearing when the lump sum offer was $100,000. Since the annuity remained the same in the last offer, the evidence is pertinent. There is no countervailing evidence in the record.

give him his fees in full, while at the same time provide Marlene with the full amount of the monthly annuity for her support. The Chows argue that the court was equitable to all parties. The record indicates Marlene would be requiring further surgical work, costing several thousand dollars, in the near future which would have to be paid out of the balance of the lump sum. If Humphries were paid the additional $50,000 out of the lump sum, the balance would barely cover those costs leaving very little for emergencies.

Humphries cites several cases to indicate that the majority of courts deciding the method of awarding attorney's fees in cases of settlement on the basis of an annuity have held that the fees should be paid out of the lump sum. However, we find those cases to be factually distinguishable. We are more persuaded by *Sayble v. Feinman,* 76 Cal. App. 3d 509, 142 Cal. Rptr. 895 (1978) cited by the Chows. In *Sayble,* the court held that where the attorney and client had entered into a contingency fee contract providing for the attorney to be paid a percentage of "any money recovered," the parties had contracted in anticipation of a lump sum settlement and, where the actual settlement contained a lump sum payment and an annuity, it was proper for the lower court to award a fee based upon a portion of the lump sum and a portion of the annuity payments when and as received. The court held that the client did not recover any money on the annuity contract until each payment was in fact made; that the annuity was a promise of future payments which may or may not be made.

Humphries argues, however, that the case before us is distinguishable from *Sayble,* because the language of the contracts are different, the language here being "settlement, verdict or recovery," while the language in *Sayble* is "any money recovered." We do not perceive any difference since, in both cases, the parties contemplated a lump sum monetary settlement at the time of the contract. In the case at bar, the settlement merely provided that the recovery would be money paid in the future. If Marlene died the day after settlement was approved, she would in fact have recovered only the lump sum payment. The inequity in that event of having awarded Humphries an attorney's fee based on the present cash value of the annuity is obvious. The fact that the settlement is a novel approach only emphasizes the fact that such an arrangement was not within

the contemplation of the contract.[10] This court cannot allow Humphries to hedge against his risk by re-writing the contract.

We point out again that the retainer agreement was no longer binding, since Humphries was discharged before the contingency. Therefore, the court had the discretion to fashion not only the proper amount of the award, but the method of payment. Humphries does not question the percentage awarded.

Humphries' argument that affirming the lower court decision would have the effect of stultifying efforts of attorneys to seek and adopt innovative forms of settling disputes and encouraging strife between attorneys and clients is without merit. Attorneys will be just as innovative in drafting retainer agreements; and the courts are always available to settle disputes.

Affirmed.

*Tobias C. Tolzmann (Wilfred H. Humphries,* appellant *pro se,* on the opening brief) for appellant.

*Leslie S. Fukumoto (Matthew S. K. Pyun, Jr.,* with him on the brief; *Pyun, Kim & Okimoto* of counsel) for appellees.

---

[10] We note that the first settlement of $31,500 presented to and approved by the court was for a lump sum. Also, Humphries points out repeatedly that the annuity type settlement was innovative and unprecedented in this jurisdiction.