**In the Matter of Harold W. MYERS.**

No. 02S00–9504–DI–436.

Supreme Court of Indiana.

April 15, 1996.

Harold W. Myers, Fort Wayne, Ronald E. Elberger, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Donna McCoy Spear, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

DISCIPLINARY ACTION

PER CURIAM.

Respondent Harold W. Myers, an attorney admitted to practice in this state in 1970, has

been charged with lawyer misconduct stemming from a fee dispute with a client pursuant to a contingency fee arrangement. The Disciplinary Commission and the respondent have submitted for our approval a *Statement of Circumstances and Conditional Agreement for Discipline,* pursuant to Ind.Admission and Discipline Rule 23, Section 11(g).[1] In the proffered agreement, the parties agree that a public reprimand is an appropriate discipline for the respondent's actions. We now find that the parties' agreement should be approved, and herein set forth the facts and circumstances of this case.

The parties agree that in November, 1989, a family (the "clients") asked the respondent to investigate the status of certain investment funds they had deposited with an investment company (the "company"). The clients were having difficulty obtaining their invested funds and had become concerned about the security of their investments. The respondent conducted some initial inquiries and investigation on their behalf. On January 5, 1990, the respondent and the clients entered into a written contingency fee agreement pursuant to which the clients retained the respondent to seek recovery of the invested funds. That agreement provided, in relevant part:

> For Attorney's services, Client agrees to compensate Attorney in the following manner:
>
> A contingent fee of 10% of the gross recovery of money and/or property prior to the filing of a claim. In the event that the filing of a claim becomes necessary and recovery is made following said filing, a contingent fee of 10% of the gross recovery shall be paid as compensation for attorney's services.

The respondent thereafter negotiated a settlement on behalf of the clients. According to the terms of the settlement, the company and two individuals associated with it agreed to pay the clients a total of $550,000 over a period of time. Fifty thousand dollars was due upon execution of the settlement agreement, $50,000 was due on March 15,

1990, and $15,000 was to be paid by April 15, 1990, and by the fifteenth day of each month thereafter for a total of 30 months. Those terms were memorialized in a release, executed on February 7, 1990. The release purportedly was signed by both individuals.

The respondent proposed to take the entire February 7, 1990, payment of $50,000 in partial satisfaction of his total attorney fee of $55,000. At the February 7, 1990, settlement meeting, during which the clients received the first settlement check of $50,000, the clients expressed to the respondent their reluctance to remit the entire payment to the respondent as fees. After discussion, the respondent deducted $35,000 toward satisfaction of his fee and remitted the $15,000 balance to his clients. He did not immediately provide them with a written settlement agreement reflecting funds received or the method of their disposition between lawyer and client. However, by letter dated February 23, 1990, the respondent did reveal to the clients the outcome of the matter, the recovery, and the amount of remittance to them.

From the second payment of $50,000, made on March 15, 1990, the respondent deducted $15,000 toward his attorney fees and remitted the balance of $35,000 to the clients. He then relinquished any claim to an additional $5,000 in fees and notified the individual paying the settlement that the remaining periodic payments of $15,000 should be made directly to the clients. Out of the $50,000 total fee gathered by the respondent, he paid $25,000 to co-counsel.

In the days that followed, the clients continued to question the fact that the respondent had taken his entire fee from the first two settlement payments. On March 19, 1990, the clients filed a request for fee arbitration with the local bar association, in essence stating that the respondent's retention of $50,000 was contrary to the contingency fee agreement, since the entire gross settlement amount had not yet been paid. A bar association committee rendered a non-binding decision on June 27, 1990, stating that the respondent was entitled to ten percent of

1. Indiana Admission and Discipline Rule 23 was amended, effective February 1, 1996. Former subsection 11(g) is now subsection 11(c).

the funds actually recovered then to date pursuant to the settlement agreement. The committee concluded that the respondent was entitled to a total fee of $14,500 and that the respondent should refund $35,500 to the clients.[2] Payments pursuant to the settlement agreement continued only until July 15, 1990, after a total of $160,000 had been paid. No further funds were ever received by the clients pursuant to the agreement.

The respondent refused to honor the non-binding arbitration agreement, believing that the committee should have characterized amounts paid to co-counsel as expenses.[3] Later, after the individuals defaulted on the settlement agreement, the clients requested the services of the respondent and co-counsel in curing the default. On September 11, 1990, the respondent filed suit to recover the $395,000 still unpaid pursuant to the settlement agreement. The suit failed to yield any recovery in favor of the clients. In February, 1991, at the clients' request, the respondent withdrew his appearance. The clients never directly recovered any more of the funds from the individuals or the company, although later, with assistance of other counsel, they recovered approximately $51,000 from the estate of one of the individuals. That recovery was conditional on the clients' dismissal of the actions previously filed by the respondent.

In its verified complaint for disciplinary action, the Commission charged that the respondent violated subsections (a) and (c) of Ind.Professional Conduct Rule 1.5, which provide:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

.     .     .     .     .

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d)[4] or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with

---

2. At the date the committee rendered its decision, only $145,000 had been paid pursuant to the settlement agreement.

3. The respondent admits in the tendered *Conditional Agreement* that this argument, although made in good faith, was erroneous. In this regard, *see* Prof.Cond.R. 1.5(c), *infra,* which provides that written contingent fee agreements must specify litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. We note here that the respondent's agreement with the client based the contingent fee on any "gross" recovery.

That term is generally intended to mean that the client is to pay costs of litigation out of his or her share of the recovery. *See* G. Hazard and W. Hodes, *The Law of Lawyering,* (2d Ed., 1990), Section 1.5:401.

4. Subsection (d) of Prof.Cond.R. 1.5 prohibits contingent fee agreements for representing a defendant in a criminal case or in a domestic relations matter where payment of the fee is "contingent upon the securing of a dissolution, obtaining the custody of a child, the amount of support, or the measure of property settlement ..."

a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

■ By retaining $50,000 from the first two settlement payments, the respondent apparently interpreted the phrase "gross recovery of money," as contained in the contingent fee agreement, to refer to amounts promised to be paid pursuant to the settlement agreement. The clients, as shown by their hesitancy to allow the respondent $50,000 from the first payments and later request for arbitration, indicated they believed the term "recovery" to mean *actual receipt* of funds. By agreeing to discipline, the respondent has acknowledged that his interpretation of the contingency fee agreement during the time of his fee dispute with his clients was erroneous.[5] The clients' reasonable expectation was that the respondent's fee would amount to ten percent of the funds actually recovered. In fact, the fee the respondent retained approached thirty percent of the total actual recovery. We therefore conclude that the respondent's fee was unreasonable in the circumstances and therefore violative of Prof. Cond.R. 1.5(a).

More than two weeks after the day of settlement, the respondent provided his clients with a letter that indicated the outcome of the case, the recovery, and the remittance to them. There is, however, no indication in the parties' agreement that the letter contained a statement of the method of determination of the remittance. We therefore find that the respondent violated Prof. Cond.R. 1.5(c), which requires a statement of such method.

■ Now that we have found misconduct, we now assess the appropriateness of the agreed sanction, that being a public reprimand. In so doing, we note several factors the parties offer in mitigation. Most significant is the respondent's payment of approximately $36,000 in restitution to the clients. That amount represents the difference between the almost thirty percent fee he exacted and the ten percent fee agreed to by the clients (taking into account the estate funds eventually obtained by the clients) and interest upon the refund. We also note that in other, unrelated legal matters, the respondent provided legal services to the clients for which he was not compensated. Although these factors mitigate the severity of the respondent's misconduct, they do not excuse it. Whether or not an attorney's fee is excessive is a question of public import; it has an impact on the availability of legal services to the public, the administration of justice, and, ultimately, reflects on the attorney's status. *In re Gerard,* 634 N.E.2d 51 (Ind. 1994), *In re Smith,* 572 N.E.2d 1280 (Ind. 1991). If the cost of legal service is excessive, the public is deterred from using the legal system in the protection of rights. In the present case, the respondent attempted to exact a fee that greatly exceeded that which the clients agreed to pay. He retained the unreasonable fee even in the face of his clients' initial hesitation and later express challenge *via* arbitration.

■ Lawyers are obligated to act with an allegiance to the interests of their clients. Most clients must pay lawyers engaged in private practice for their services, thus creating a risk of conflicting economic interests. Lawyers almost always possess the more sophisticated understanding of fee arrange-

5. Where there is not an explicit agreement governing contingencies (such as default) arising in relation to structured settlement agreements, other jurisdictions have construed ambiguities in concomitant contingency fee agreements against the attorney. *See, e.g., Cardenas v. Ramsey County,* 322 N.W.2d 191, 194, 31 A.L.R.4th 89 (Minn. 1982) (contingency fee agreement provided for attorney's fee of one third of the "total amount recovered" pursuant to structured settlement; in construing the term "recovered" to mean actual receipt of funds, the court reasoned that such an approach was appropriate, given the attorney's greater knowledge and experience with respect to fee agreements and because of the trust the client placed in him as his attorney); *Matter of Chow,* 3 Haw.App. 577, 656 P.2d 105 (1982) ("recover" construed to mean when actually paid); *Johnson v. Sears, Roebuck & Co.,* 291 Pa.Super. 625, 436 A.2d 675 (1981) (attorney's fees may be based only on amounts actually received by clients). *See also Briggs v. Clinton County Bank & Trust Co. of Frankfort,* 452 N.E.2d 989 (Ind.App.1983), *reh'g. denied, trans. denied* (contract for legal services governed by more strict rules than those applicable to parties on equal footing).

ments. It is therefore appropriate to place the balance of the burden of fair dealing and the allotment of risk in the hands of the lawyer in regard to fee arrangements with clients. *See, e.g., Cardenas, supra,* 322 N.W.2d 191. In this case, the respondent employed his superior position in the bargaining and settlement process to exact an inflated legal fee from his clients. However, because he ultimately relented and made restitution and because he reached an agreement for discipline with the Commission, we conclude that a public reprimand is not inappropriate.

The respondent, therefore, is hereby reprimanded and admonished for the misconduct set out above.

Costs of this proceeding are assessed against the respondent.