Filed 4/27/23; modified and certified for publication 5/30/23 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GRISELDA DURAN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EMPLOYBRIDGE HOLDING COMPANY et al.,<br><br>Defendants and Appellants. | F084167<br><br>(Super. Ct. No. BCV-20-101583-BCB)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Duane Morris, Paul J. Killion, Eden E. Anderson, Gerald L. Maatman, Jr. and Jennifer A. Riley for Defendants and Appellants.

JCL Law Firm, Jean-Claude Lapuyade, Monnett De La Torre; Zakay Law Group, Shani O. Zakay and Jackland Hom for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Franson, J. and Smith, J.

This appeal challenges the denial of a motion to compel arbitration of claims to recover civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.).[1]  The denial of the motion was based on the trial court's determination that the agreement to arbitrate specifically excluded PAGA claims. We conclude the trial court correctly interpreted the agreement's carve-out provision stating that "claims under PAGA … are not arbitrable under this Agreement."  This provision is not ambiguous.  It is not objectively reasonable to interpret the phrase "claims under PAGA" to include some PAGA claims while excluding others.  Thus, the carve-out provision excludes all the PAGA claims from the agreement to arbitrate.

We therefore affirm the order denying the motion to compel arbitration.

**FACTS**

Plaintiff Griselda Duran was employed from April 2018 to August 2019 by defendant EmployBridge, LLC, which does business in California as Select Staffing.  In March 2018, as part of her employment application, plaintiff electronically signed an arbitration agreement.

The arbitration agreement (1) states it "is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq." and (2) contains a broad agreement to arbitrate claims:

> "In the event there is any dispute between [Duran] and the Company relating to or arising out of the employment or the termination of [Duran], which [Duran] and the Company are unable to resolve informally through direct discussion, regardless of the kind or type of dispute, [Duran] and the Company agree to submit all such claims or disputes to be resolved by final and binding arbitration, instead of going to court, in accordance with the procedural rules of the Federal Arbitration Act."

The agreement specifically encompasses wage-hour disputes: "[S]aid disputes may include but are not limited to claims for or under: … wages, salary, compensation, reimbursement, penalties, … the Federal Labor Standards Act and comparable state or

---

[1]     Unlabeled statutory references are to the Labor Code.

local laws, … and state laws regarding unfair competition or unfair business practices." The agreement also contains a class and representative action waiver that states:

> "Except as prohibited under applicable law, [Duran] and the Company expressly intend and agree that: (1) class action, collective action, and *representative action* procedures shall not be asserted nor will they apply, in any arbitration proceeding pursuant to this Agreement; (2) neither [Duran] nor the Company will assert any class action, collective action, or *representative action claims against each other in arbitration, in any court, or otherwise*; and (3) [Duran] and the Company shall only submit their own respective, individual claims in arbitration and will not seek to represent the interests of any other person."  (Italics added.)

The agreement states that the "class/collective/representative action waiver does not apply to claims brought under the National Labor Relations Act (NLRA)."[2]

The carve-out provision that was the basis for the trial court's decision to deny arbitration states:  "Claims for unemployment compensation, claims under the National Labor Relations Act, *claims under PAGA*, claims for workers' compensation benefits, and any claim that is non-arbitrable under applicable state or federal law *are not arbitrable under this Agreement*."[3]  (Italics added.)  This is the agreement's only reference to PAGA.

The final paragraph of the agreement addresses severability:  "Should any term or provision, or portion of this Agreement, be declared void or unenforceable or deemed in contravention of law, it shall be severed and/or modified by the court, and the remainder of this Agreement shall be fully enforceable."

---

**2**    All PAGA claims are "representative" in the sense that they are pursued by an aggrieved employee as the representative of the State of California—that is, "as the proxy or agent of the state's labor law enforcement agencies" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986) and all PAGA claims only seek to recover civil penalties that are distributed 75 percent to the Labor and Workforce Development Agency and 25 percent to the employee aggrieved by the Labor Code violation (*Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1234; see § 2699, subd. (i)).

**3**    The wording of this provision is the same as the carve-out provision in *Saheli v. White Memorial Medical Center* (2018) 21 Cal.App.5th 308, 315.

In a letter dated April 30, 2020, plaintiff's attorney provided a written notice to the Labor and Workforce Development Agency and Select Staffing pursuant to section 2699.3. The notice identified claims for violations of sections 201, 201.3, 202, 203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.14, 1198, 1199, 2802, and an Industrial Welfare Commission Wage Order pertaining to employee seating. The statutory waiting period expired without a response. (See § 2699.3, subd. (a)(2)(A) [65 calendar days].) Thus, by operation of law, plaintiff became a representative or proxy of the State of California with the authority to "commence a civil action pursuant to Section 2699." (§ 2699.3, subd. (a)(2)(A).)

## PROCEEDINGS

In July 2020, plaintiff sued EmployBridge Holding Company, a Delaware corporation, solely to recover civil penalties under PAGA for Labor Code violations suffered by her or by other employees. In April 2021, plaintiff filed a first amended complaint that contained one cause of action for violation of PAGA. The first amended complaint states:

> "PLAINTIFF brings this action … seeking only to recover <u>PAGA civil penalties</u> for herself, and on behalf of all current and former aggrieved employees that worked for DEFENDANTS. PLAINTIFF does **not seek to recover anything other than penalties as permitted by California Labor Code § 2699**. To the extent that statutory violations are mentioned for wage violations, PLAINTIFF does not seek underlying general and/or special damages for those violations in this action, but simply the civil penalties permitted by California Labor Code § 2699. Notwithstanding, PLAINTIFF is not abandoning her right to pursue her individual claims for, *inter alia*, Defendant's alleged wage violations, and/or general or special damages arising from those violations, and she fully intends to, at a future date, pursue claims for those individual claims and damages."

In October 2021, plaintiff added EmployBridge, LLC, a California limited liability company, and Select Staffing, an entity of unknown origin or type, in place of two Doe defendants. We refer to the defendant entities collectively as "Select Staffing."

4.

In January 2022, Select Staffing moved to compel arbitration. Select Staffing argued the court should compel arbitration of plaintiff's claim on an individual, nonrepresentative basis and also argued the representative action waiver was enforceable.

In February 2022, the superior court denied the motion. The court concluded the issues presented were not subject to arbitration because the agreement specifically excluded PAGA claims from arbitration. Select Staffing appealed.

## DISCUSSION

### I. ANTI-WAIVER RULE

In *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, the California Supreme Court concluded that "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Id.* at p. 360.)

In *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S.Ct. 1906] (*Viking River*), the United States Supreme Court stated: "The agreement between Viking and Moriana purported to waive 'representative' PAGA claims. Under *Iskanian*, this provision was invalid if construed as a wholesale waiver of PAGA claims. And under our holding, that aspect of *Iskanian* is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner." (*Viking River*, *supra*, 142 S.Ct. at pp. 1924–1925.)

Consequently, the *Iskanian* rule that invalidates waivers of the right to bring a representative action under PAGA is not preempted by federal law and remains binding precedent. Under *Iskanian*'s anti-waiver rule, the contractual provision stating Duran will not "assert any … representative action claims against [Select Staffing] in arbitration, in any court, or otherwise" insofar as it applies to a PAGA action cannot be given any effect.

5.

## II. SEVERING THE INVALID WAIVER OF REPRESENTATIVE CLAIMS

The issue of severing the waiver of representative claims as it applies to the PAGA claims requires little analysis. The lead-in clause to the waiver provision states "[e]xcept as prohibited under applicable law." Applicable law includes the *Iskanian* anti-waiver rule and it prohibits the waiver of PAGA claims. Consequently, the PAGA claims fall within the exception to the agreement's waiver provision. Because the exception applies, there is no invalid provision to sever from the remainder of the agreement.

## III. INTERPRETATION OF ARBITRATION AGREEMENT

### A. Basic Principles

Arbitration is strictly a matter of consent. A party cannot be required to arbitrate a dispute that he or she has not agreed to submit to arbitration. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252.) Thus, as a general rule, the parties may freely delineate in their contract which disputes will be arbitrated and which will not. (See *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 771 (*Gravillis*).) Whether the parties agreed to arbitrate all or a portion of "the present controversy turns on the language of the arbitration clause." (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1320 (*EFund*).)

The parties agree that where the language of the arbitration provision is not in dispute and no conflicting extrinsic evidence is introduced, the trial court's decision as to arbitrability is reviewed de novo. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684.)

Our interpretation of the arbitration agreement employs the ordinary rules of contract interpretation. (*EFund*, *supra*, 150 Cal.App.4th at p. 1321.) Our goal is to give effect to the mutual intention of the parties at the time the contract was formed. (*Ibid.*) The contractual language must be given its usual and ordinary meaning, the agreement must be interpreted as a whole, and the language must not be determined to be ambiguous

6.

in the abstract. (*Ibid*.) California has a strong public policy favoring arbitration and, as a result, ambiguities or doubts about the scope of the arbitration provision should be resolved in favor of arbitration. (*Gravillis*, *supra*, 143 Cal.App.4th at p. 771.) In accordance with this policy, "an exclusionary clause in an arbitration provision should be narrowly construed." (*Ibid*.) The policy favoring arbitration, however, does not apply when unambiguous language shows the parties did not agree to arbitrate all or a part of the dispute. (*Id*. at p. 772.)

B.     Contractual Language

The carve-out provision of the arbitration agreement reads in full: "Claims for unemployment compensation, claims under the National Labor Relations Act, claims under PAGA, claims for workers' compensation benefits, and any claim that is non-arbitrable under applicable state or federal law are not arbitrable under this Agreement."

Under California law, the first step in analyzing the meaning of a contract is to determine whether the language is ambiguous—that is, reasonably susceptible to more than one meaning. (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 754–755 [court's threshold question when interpreting a contract is whether the writing is ambiguous].) Whether an ambiguity exists is a question of law subject to independent review. (*Id*. at p. 755.) Here, the parties presented no extrinsic evidence and, therefore, we resolve the question of ambiguity based solely on the contents of their agreement.

As drafted, the carve out provision contains no qualifying language. It simply says that "claims under PAGA … are not arbitrable under this Agreement." Civil Code section 1638 provides that the "language of a contract is to govern its interpretation, if the language is clear and explicit." Accordingly, courts enforce an unambiguous agreement as written rather than rewriting it to contain limitations the parties did not express. (*Ibid*.; see *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 393, fn. 16 [courts determine the objective meaning of the contract's language to protect the parties'

objectively reasonable expectations].)  Moreover, the policy favoring arbitration does not override an agreement's clear language and create an ambiguity where none exists.  (See *Gravillis*, *supra*, 143 Cal.App.4th at p. 772.)

We conclude the language stating claims under PAGA are not arbitrable under the agreement is unambiguous.  It cannot be reasonably interpreted to mean the parties agreed to arbitrate the category of PAGA claims seeking to recover civil penalties that will be split 75 percent to the state and 25 percent to plaintiff—that is, the claims seeking to recover penalties for Labor Code violations *suffered by plaintiff*.[4]  (Cf. *Olabi v. Neutron Holdings, Inc.* (2020) 50 Cal.App.5th 1017, 1021 [arbitration agreement carved out PAGA representative actions; denial of motion to compel arbitration affirmed].)  In other words, Type A claims and Type O claims are both "claims under PAGA" for purposes of the carve-out provisions.

We note Select Staffing has argued the clear intent of the carve-out provision was to simply identify claims that applicable law prohibits from being arbitrated.  Under this interpretation, the modifier "nonarbitrable" would be inserted before "claims under PAGA" so the provision would read "[nonarbitrable] claims under PAGA … are not arbitrable under this Agreement."  Indeed, in arguing that the "purpose of the carve-out clause was to except from arbitration claims that are non-arbitrable as a matter of law,"

---

**4**     In *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639 (*Galarsa*), we designated this particular type of PAGA claim as "Type A."  (*Id*. at p. 648.)  At this court's suggestions, the respondent's brief and appellants' reply brief used this label and the label "Type B" for PAGA claims seeking to recover a civil penalty imposed because of a Labor Code violation suffered by an employee other than the plaintiff.  In *Galarsa*, we labeled the latter type of PAGA claim as " 'Type O' " based on the "O" in the word "other."  (*Id*. at p. 649.)  Here, we again emphasize that all PAGA claims are pursued by the plaintiff "as the representative of the State of California" and seek only the recovery of civil penalties that are "distributed 75 percent to the Labor and Workforce Development Agency and 25 percent to the employee aggrieved by the Labor Code violation."  (*Id*. at p. 648.)  For the remainder of this opinion, we use the terms "Type A" and "Type O" as defined in *Galarsa*.

the appellants' reply brief shows where in the clause's actual text the modifier "nonarbitrable" should be inserted. Select Staffing's argument fails to consider Code of Civil Procedure section 1858, which states in full:

> "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted*, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Italics added.)

Courts have applied this statutory provision to contracts, which implies that the term "instrument" encompasses contracts. (E.g. *Sayble v. Feinman* (1978) 76 Cal.App.3d 509, 515; see Black's Law Dict. (6th ed. 1990) p. 801 [instrument defined as a formal document in writing, such as a contract].) Pursuant to Code of Civil Procedure section 1858, we will not rewrite the parties' agreement.

If Select Staffing intended the clause to be a truism—that is, only nonarbitrable PAGA claims would not be arbitrable under the agreement—it should have drafted the clause to say so. (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 980 [a party's undisclosed intent or understanding is irrelevant to contract interpretation]; see *Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8 [objective intent, as evidenced by the words of the contract, rather than one party's subjective intent, controls the interpretation].) Alternatively, Select Staffing should have presented extrinsic evidence showing this alleged intention was communicated between the parties. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [use of extrinsic evidence when determining a contract's meaning].)

IV.     OTHER ISSUES

Based on the interpretation that the arbitration agreement excludes all PAGA claims from arbitration, we need not reach other issues involving *Viking River*, *supra*, 142 S.Ct. 1906. For instance, we need not revisit our conclusion in *Galarsa, supra,* 88

Cal.App.5th 639, that when Type A claims are subject to arbitration under a predispute arbitration agreement, the Type O claims may be pursued in court, rather than dismissed as was done by the United States Supreme Court in *Viking River*.[5]

In addition, we need not consider whether the United States Supreme Court misinterpreted California law by stating: "When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) It appears a PAGA plaintiff is, in fact, "different from a member of the general public" because an aggrieved employee is authorized to "commence a civil action pursuant to Section 2699" (§ 2699.3, subd. (a)(2)(A)) only after completing the procedures set forth in section 2699.3 and thereby becoming an authorized representative of the State of California. In contrast, a member of the general public has not completed PAGA's procedural requirements and, thus, is not a representative of the State of California authorized by operation of law to pursue PAGA claims against the employer.

Also, we need not address whether our Supreme Court's statement that "section 2699(c) has only two requirements for PAGA standing" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83) implies PAGA, *taken in its entirety*, has only two requirements for standing. (See *Piplack v. In-N-Out Burgers, supra,* 88 Cal.App.5th at p. 1285 ["We read *Kim* as recognizing two (and only two) requirements for standing

---

[5] Since *Galarsa* was published, four other decisions have reached the same conclusion and determined dismissal for lack of standing is not required by California law. (*Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1292; *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786 ; *Seifu v. Lyft, Inc.* (Mar. 30, 2023, B301774) ___ Cal.App.5th ___ [2023 Cal.App. Lexis 247]; *Nickson v. Shemran, Inc.* (Apr. 7, 2023, D080914) ___ Cal.App.5th ___ [2023 Cal.App. Lexis 265].) On May 9, 2023, the California Supreme Court will hear oral argument on whether a plaintiff who has been compelled to arbitrate Type A claims maintains statutory standing to pursue Type O claims in court or any other forum. (*Adolph v. Uber Technologies, Inc.* (2022) (Aug. 1, 2022, S274671) [2022 Cal. Lexis 5021].)

under PAGA"].)  An aggrieved employee's completion of the procedures set forth in section 2699.3 could be conceptualized as a standing requirement.  For instance, our Supreme Court has described the notice procedure in section 2699.3 "[a]s a condition of suit," a phrase that could be interpreted as identifying a standing requirement.  (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545; see *Arias v. Superior Court* (2009) 46 Cal.4th 969, 981 ["Before bringing a civil action for statutory penalties, an employee must comply with … section 2699.3"].)

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Plaintiff shall recover her costs on appeal.

Filed 5/30/23

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GRISELDA DURAN,<br><br>  Plaintiff and Respondent,<br><br>    v.<br><br>EMPLOYBRIDGE HOLDING COMPANY et al.,<br><br>  Defendants and Appellants. | F084167<br><br>(Super. Ct. No. BCV-20-101583-BCB)<br><br><br>**ORDER GRANTING PUBLICATION AND MODIFYING OPINION [NO CHANGE IN JUDGEMENT]** |

**THE COURT:**

As the nonpublished opinion filed on April 27, 2023, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

Additionally, it is so ordered that the opinion, be modified as follows:

1. On page 3, the following sentences are added to the end of footnote 3:

> That decision, however, did not address the meaning of the phrase "claims under PAGA."  The parties have cited, and we have located, no California appellate decision determining the meaning of an arbitration agreement's carve-out of "claims under PAGA."

2. On page 8, in the second sentence of footnote 4 the word "suggestions" is changed to "suggestion."

3. On page 10, footnote 5, the citations to *Gregg v. Uber Technologies, Inc., Seifu v. Lyft, Inc.,* and *Nickson v. Shemran, Inc.* are updated to read as follows:

> *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 805–806; *Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1139–1141; *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 134–135.

4. On page 10, footnote 5, in the sentence beginning "On May 9, 2023," the phrase "will hear" is changed to the word "heard."

5. On page 10, the second paragraph beginning "In addition" is deleted in its entirety and replaced with the following paragraph:

> More specifically, we need not analyze the implications of the mischaracterization of California law in the United States Supreme Court's statement that "[w]hen an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) A PAGA plaintiff is, in fact, "different from a member of the general public" because an aggrieved employee is authorized to "commence a civil action pursuant to Section 2699" (§ 2699.3, subd. (a)(2)(A)) only after completing the procedures set forth in section 2699.3 and thereby becoming an authorized representative of the State of California. In contrast, members of the general public have not fulfilled section 2699.3's procedural requirements and are not, by operation of law, representatives of the State of California authorized to commence a PAGA civil action against the employer.

6. On page 10, the third paragraph beginning "Also, we" is deleted in its entirety and replaced with the following paragraph:

> Also, we need not address issues regarding PAGA standing, which include whether completion of the notice procedures set forth in section 2699.3 and subsequent authorization to act as the representative of the State of California is properly conceptualized as a standing requirement under PAGA. (See *Williams v. Superior Court* (2017) 3 Cal.5th 531, 545 [notice procedure in § 2699.3 described "[a]s a condition of suit"]; *Arias v. Superior Court* (2009) 46 Cal.4th 969, 981 ["Before bringing a civil action for statutory penalties, an employee must comply with … section 2699.3"].) Another issue relates to timing and how PAGA's standing requirements are applied throughout the course of a civil action. For

2.

instance, if an aggrieved employee is an authorized representative of the State of California and satisfies any other PAGA standing requirements *when the civil action is commenced*, does that employee retain standing or authorization to pursue the action to a final judgment regardless of intervening events, provided the employee's authorization to act as the State of California's representative is not revoked.

There is no change in the judgment.

FRANSON, J.

**WE CONCUR:**

HILL, P. J.

SMITH, J.

3.