[Civ. No. 40314. First Dist., Div. Two. Nov. 23, 1977.]

UNITED TEACHERS OF OAKLAND, LOCAL 771, AFT, AFL-CIO, et al., Plaintiffs and Appellants, v.
OAKLAND UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

## COUNSEL

Van Bourg, Allen, Weinberg & Roger and Stewart Weinberg for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, and Neal Snyder, Deputy County Counsel, for Defendants and Respondents.

## OPINION

TAYLOR, P. J.—United Teachers of Oakland, Local 771, AFT, AFL-CIO (Teachers) and one of its members, Robert Harter (Harter), appeal from a judgment denying their petition for a writ of mandate[1] to compel the Oakland Unified School District (District) and its governing board to reassign Harter to the school where he had taught before his sabbatical leave. Harter contends on this appeal that the rules of interpretation relating to contracts are not applicable to the rules and regulations of the governing board, and that the trial court erred in admitting extrinsic evidence of intent. For the reasons set forth below, we affirm the trial court's conclusions that under the applicable rules, Harter had no guaranteed right of reassignment and that the District was free to transfer him to another school within its boundaries.

[1]The petition was filed pursuant to Code of Civil Procedure section 1085, not Code of Civil Procedure section 1094.5.

The essential facts are not in dispute. In March 1974, Harter was a tenured teacher at Skyline High School (Skyline); he applied for a sabbatical leave from September 1974 through June 1975. As Harter was concerned that he might be reassigned to a different school after his return, he approached C. David Swanson, the principal of Skyline, and William S. Weichert, the coordinator of certificated personnel for the District. Harter sought a written statement that he would be allowed to return to the same school. He was advised in person by Swanson and by letter from Weichert that no such guarantee could be given under the applicable rules of the District, but that every effort would be made to place him in the same school. However, after Harter returned, he was informed that no position was available at Skyline. He was then assigned to teach at Oakland Technical High School, another school in the District, and has been employed there since.

Harter demanded an advisory arbitration hearing pursuant to the grievance procedure of the District. The arbitrator granted him relief, but the governing board refused to accept the advisory ruling as allowed by the arbitration rules on the ground that *the arbitrator had mistakenly believed that relevant rules and regulations of the board were not in effect at the time Harter applied for and was granted his leave.*

At trial, and on this appeal, Harter relies upon paragraph I of *Administrative Bulletin 31,* which, both at the time he was granted a leave in 1974, and when he returned in 1975, provided so far as pertinent: "I. Return to Service.

"At the expiration of the sabbatical leave of absence, *the employee shall be assigned to a position of equal status but no guarantee can be given that it will be the same position he occupied at the time the leave was granted. A sabbatical leave returnee shall be reassigned to the same school from which the leave was taken unless he would have been transferred had he been on duty.* If he wishes a different assignment, he shall follow the District's transfer procedures. . . ." (Italics added.)

The District does not contend that Harter would have been transferred had he remained on duty but relies upon the rules and regulations governing employer and nonadministrative certificated employees for

the 1973-1974 school year (hereafter Rules and Regulations), which were adopted by the governing board prior to Harter's application for leave. These Rules and Regulations were the outcome of a "meet and confer" proceeding, pursuant to the Winton Act between representatives of the District and negotiators for the "Certificated Employees Council," which represented the various Teachers' unions in the District.[2]

Section 3105.1 of the Rules and Regulations provides: "Except for maternity, paternity, adoption and military leave, *leaves will be granted only to teachers with tenure.* For special programs requiring two consecutive years, a two-year leave may be granted. *A teacher granted leave of absence shall be placed on the unassigned list. In all leaves of absence of a semester or more, every effort will be made, consistent with staff changes, enrollment changes and budgetary allowances for staffing, to return* the teacher to the former school and to the *same or similar assignment, if so desired.* Section 2438 of the Board Rules and Regulations provides information pertaining to application procedures for leaves." (Italics supplied.)

Admittedly, the District failed to amend its written policies, including Administrative Bulletin No. 31, to conform to the Rules and Regulations, as mandated by sections 201[3] and 300[4] of the Rules and Regulations, set forth below. Thus, Administrative Bulletin No. 31

---

[2] A new Education Code was enacted by Statutes of 1976, chapters 1010 and 1011, operative April 30, 1977. Former Education Code sections 13457, 13458 and 13459 provide generally for sabbaticals but leave to the individual school district the adoption of provisions governing the placement of a teacher who has returned from a sabbatical. Section 13462 governs reinstatement from any leave and guarantees that a teacher will be reinstated in an assignment within the scope of certificate under which the teacher was employed at the time the leave began. However, this section does not guarantee that after a return from a sabbatical a teacher will be reinstated to the same school and same class (*Adelt* v. *Richmond Sch. Dist.,* 250 Cal.App.2d 149, 150-151 [58 Cal.Rptr. 151]).

[3] "No provision of this Resolution shall be changed, modified, or altered, except for such amendments as may be considered necessary for the Board to comply with statutory provisions, legal requirements, or an extraordinary circumstance requiring immediate attention. *The Board will amend its written policies and take such other action as may be necessary in order to give full force and effect to the provisions of this Resolution.*" (Italics supplied.)

[4] "If any provision of the Board rules and regulations or the district administrative bulletins, or any application of them, shall be found contrary to law; then such provision or application shall not be deemed valid, except to the extent permitted by law. *Further, if any provision or application of such provision stated in this Resolution be found contrary to Board rules and regulations or administrative bulletins, it shall be modified by the Board to be compatible with this Resolution as provided in Article 2 herein.*" (Italics supplied.)

appeared, on its face, to have been in effect when Harter was granted his sabbatical. To overcome this problem, the District presented evidence to the trial court in the form of a declaration by James R. Wilson, coordinator of staff relations, stating that section 3105.1 was intended by the representatives of both sides at the meet and confer sessions to supersede Administrative Bulletin No. 31. (1▮) The District argues that the Rules and Regulations constituted either an alteration, pursuant to Civil Code section 1698,[5] or a novation pursuant to Civil Code sections 1530 and 1531[6] of the existing employment contract between the District and its certificated employees.

Harter first contends that the rules of interpretation relating to contracts are not applicable here. He reasons that since the Rules and Regulations were the outcome of "meet and confer" sessions between the District negotiators and certificated employee council and that at the time here pertinent the Winton Act (former Ed. Code, §§ 13080-13088) granted the governing board of the District final authority over what policies were to be adopted (former Ed. Code, § 13088), the governing board was under no legal obligation to adopt the agreement reached by the negotiators (*City and County of San Francisco* v. *Cooper,* 13 Cal.3d 898 [120 Cal.Rptr. 707, 534 P.2d 403]). He argues that because of this unilateral power of the governing board, the Rules and Regulations never attained the same status as a mutually binding agreement negotiated between equal parties. Harter points out that under *Cooper, supra,* and *San Juan Teachers Assn.* v. *San Juan Unified Sch. Dist.,* 44

---

[5]Section 1698: "(a) A contract in writing may be modified by a contract in writing.

"(b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.

"(c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions.

"(d) Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts."

[6]Section 1530: "Novation is the substitution of a new obligation for an existing one."

Section 1531: "Novation is made:

"1. By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation;

"2. By the substitution of a new debtor in place of the old one, with intent to release the latter; or,

"3. By the substitution of a new creditor in place of the old one, with intent to transfer the rights of the latter to the former."

Cal.App.3d 232 [118 Cal.Rptr. 662], and *Grasko* v. *Los Angeles City* *Board of Education,* 31 Cal.App.3d 290, 300 [107 Cal.Rptr. 334], an agreement reached as a result of the Winton Act "meet and confer" sessions does not constitute an enforceable contract. Therefore, he argues the Rules and Regulations should not be interpreted as a contract.

We think Harter is in the inconsistent position of seeking to enforce Administrative Bulletin No. 31 as part of his employment contract, while arguing that the Rules and Regulations should not be interpreted as contractural. We are not dealing here with an agreement resulting from meet and confer sessions which have not yet been adopted by the governing board. Rather, the Rules and Regulations have been accepted by the governing board and promulgated as official policy. Once this process has been completed, the Rules and Regulations become part of the Teachers' employment contract and both Harter and the District are entitled to enforce them (*American Federation of Teachers* v. *Oakland Unified Sch. Dist.,* 251 Cal.App.2d 91, 97 [59 Cal.Rptr. 85]).

Harter next contends that the trial court erred in admitting extrinsic evidence of intent. As indicated above, the court admitted the declaration of James R. Wilson, coordinator of staff relations, which established that the advisory arbitrator's decision was based on the arbitrator's incorrect belief that the applicable Rules and Regulations had been adopted after Harter's application for a leave when, in fact, they had been adopted before. The Wilson declaration also indicated that the administrative bulletins were supposed to have been amended to conform to the Rules and Regulations and that, although this had not been accomplished, the District attempted at all times to adhere in good faith to the Rules and Regulations.

After the admission of this extrinsic evidence of intent, the trial court ruled as follows: ". . . Administrative Bulletin 31, para. 1, is contrary to Sect. 3105.1 of the Resolution No. 24035. Sections 201 and 300 of the resolution mandating the amendment of conflicting bulletins make it clear that the terms of the resolution are controlling in this case. Thus, although amendment of Administrative Bulletin 31 did not in fact, occur, para. 1 of Bulletin 31 was inoperative."

Harter argues that the Wilson declaration was not admissible as there is no conflict between section 3105.1 and Administrative Bulletin No. 31 and

thus no ambiguity. He invokes the rules that "Particular expressions qualify those which are general" (Civ. Code, § 3534), and that "An interpretation which gives effect is preferred to one which makes void" (Civ. Code, § 3541). He urges that Administrative Bulletin No. 31 deals specifically with sabbatical leaves, while section 3105.1 states the rule for all other types of leave.[7] Under Harter's contention, section 3105.1 should be interpreted to read "In all leaves of absence of a semester or more, *except for sabbatical leaves,* every effort will be made, consistent with staff changes, enrollment and budgetary allowances for staffing, to return the teacher to the former school and to the same or similar assignment, if so desired."

We find Harter's contention without merit. His interpretation reads into section 3105.1 terms which are not there and which easily could have been included had the District intended the result he urges. Section 3105.1 expressly refers to "*all* leaves of absence" (italics supplied) without exception. If the governing board had desired to exclude sabbatical leaves from the operation of section 3105.1, presumably it would have done so, just as it specified in the first sentence of the section that "*Except for* maternity, paternity, adoption and military leave, leaves will be granted only to teachers with tenure," Read in this light, even absent extrinsic evidence of intent, Administrative Bulletin No. 31 can most reasonably be construed as "contrary to" section 3105.1 of the

---

[7]At oral argument, Harter placed great reliance on *Adelt* v. *Richmond Sch. Dist.,* 250 Cal.App.2d 149 [58 Cal.Rptr. 151], decided by this court. In Adelt the teacher contended that the school district could not reassign her to a different school and grade level upon her return from a sabbatical leave, as former Education Code, section 13462, guaranteed her the right to the *specific* assignment she had held previously. Former section 13462 stated that "At the expiration of the leave of absence of the employee, he shall, unless he otherwise agrees, be reinstated in the position held by him at the time of the granting of the leave of absence." The teacher argued that since the Legislature had provided for sabbatical leaves, it intended to encourage these leaves, and that by interpreting former section 13462 to provide her the right to the specific position she had held prior to taking her sabbatical leave, this court would promote the alleged legislative purpose. We rejected her contention, and noted at page 153 that her "attempt to relate this *general* code section to a *specific* type of leave (sabbatical), and to any legislative purpose attached thereto, is of doubtful validity."

In the instant case, Harter contends that *Adelt* compels us to find that there is no conflict between section 3105.1 and Administrative Bulletin No. 31,because the former must be read as applying generally to all other types of leave while the latter provision must be construed as controlling for sabbatical leaves specifically. This argument misconstrues the result in *Adelt*, however. There, we rejected the teacher's far-fetched interpretation of former Education Code section 13462, as granting the right to a specific assignment to a sabbatical leave returnee merely because another section of the Education Code provided specifically for sabbatical leaves. *Adelt* did not deal with ambiguous or conflicting contract provisions as does the instant case, and hence is inapposite.

Rules and Regulations. Sections 201 and 300 make it clear that in such a case, the terms of the Rules and Regulations are controlling.

Even if we assumed that section 3105.1 was reasonably susceptible to Harter's interpretation, we would nevertheless find it ambiguous, as it could then be read either as excluding or including sabbatical leaves from its operation. ■ A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations (*Wechsler* v. *Capital Trailer Sales,* 220 Cal.App.2d 252 [33 Cal.Rptr. 680]). While normally a contract must be interpreted according to its terms, and not by means of extrinsic evidence (Civ. Code, §§ 1638, 1639; *Jones* v. *Pollock,* 34 Cal.2d 863 [215 P.2d 733]), where the terms of the contract "are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it" (Civ. Code, § 1649). This section permits testimony by the promisor or its authorized agent as to its belief (*Kusmark* v. *Montgomery Ward & Co.,* 249 Cal.App.2d 585 [57 Cal.Rptr. 678]). Wilson was the District's authorized agent.

We can only conclude that the court did not err to Harter's prejudice in admitting Wilson's declaration to resolve any possible ambiguity in section 3105.1. The uncontroverted declaration clearly indicated that the intent and understanding of both the District and the representatives of the certificated employee council was to supplant Administrative Bulletin No. 31 with section 3105.1 of the Rules and Regulations.[8]

■ Accordingly, when the governing board adopted the Rules and Regulations for 1973-1974, Harter's prior contract of employment was altered as provided by Civil Code section 1698. Section 3105.1 was in effect, and Harter was not guaranteed the right to teach at the same school after his return from his sabbatical.

There is no question of equity here as Harter was not misled by, nor did he detrimentally rely upon, the terms of Administrative Bulletin No. 31. On the contrary, he admitted he was informed prior to taking his

[8]In view of this conclusion, it is not necessary for us to discuss Harter's contention based on *Heckley* v. *Board of Education*, 53 Cal.2d 218, 220-221 [1 Cal.Rptr. 4, 347 P.2d 4] that by Administrative Bulletin No. 31, the District adopted a rule restricting its discretionary right to freely transfer and assign certificated employees.

sabbatical that section 3105.1 was controlling and that Administrative Bulletin No. 31 was no longer in effect.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.