GREAT AMERICAN LIFE INSURANCE COMPANY, Plaintiff,

v.

Charles A. MURPHY, Defendant.

Civ. A. No. 86–1173–C.

United States District Court,
D. Massachusetts.

Nov. 12, 1986.

Joseph L. Cotter, David S. Mackey, Goodwin, Procter & Hoar, Boston, Mass., for plaintiff.

Edward E. Hicks, Comins & Newbury, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a civil action brought by Great American Life Insurance Company ("Great American"), a California corporation, against Charles A. Murphy. The complaint contains claims for breach of contract, unfair trade practices under Mass.G.L. c. 93A, § 11, misrepresentation, and unjust enrichment. This Court's jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. The matter is now before the Court after hearing on Great American's motion for summary judgment on the breach of contract count.

Plaintiff states that there are no genuine issues as to any fact which is material to the breach of contract claim. In compliance with Local Rule 18, plaintiff has presented a concise statement of the purportedly uncontested material facts. Defendant has not argued that there are contested material facts. Under Local Rule 18, therefore, plaintiff's concise statement of uncontested material facts is deemed admitted by defendant for the purposes of the motion.

A review of the relevant facts of this dispute shows that Great American and Murphy entered into a TSA/Select-Annuity Agent's Agreement (the "Agreement"). According to the Agreement, Great American designated Murphy as a Great American agent, and agreed to pay Murphy commissions for soliciting and procuring applications for annuity policies with Great American. According to the "Commission Schedule" attached to the Agreement, Great American promised to pay Murphy commissions at the rate of 13% for all "first year premiums," but would pay at the rate of only 2% for "single sum transfers." Under the Agreement, Murphy is obligated to repay to Great American unearned, excess commissions.

Murphy procured an application for a Great American annuity policy from Heath Consultants Pension Fund ("Heath"). Heath had decided to terminate a policy it had purchased previously from Home Life Insurance Company ("Home Life"), and to transfer funds from the Home Life policy to Great American, which accepted the application and issued the policy to Heath. Heath then transferred the funds from Home Life to Great American in eight different transfers, totalling $190,382.42. Great American paid Murphy a 13% commission on each of the eight transfers.

Plaintiff Great American argues that the transfers by Heath from Home Life to Great American constituted "single sum transfers," and consequently Murphy's earned commission rate should have been 2% not 13%. Since Murphy was paid excess commissions, plaintiff concludes, Murphy is obligated under the Agreement to repay to Great American these excess, unearned commissions.

Under the terms of the Agreement, "single sum transfers"

> means amounts defined as such under the policies to which this Commission Schedule applies for which our single sum transfer form is received by us and our acknowledgement and receipt is given by us to the policy Owner.

Single sum transfers are thus defined with reference to the policies to which the Commission Schedule applies. The annuity policy at issue here is Policy # 5,500,707 ("the Policy"). It states that

> [a] single sum transfer is a lump sum transferred to us from a qualified tax deferred plan, if this policy is part of a plan under which such transfers may be made, or as a tax free exchange of another policy.

The question of law presented in this motion for summary judgment involves the

construction of the term "single sum transfers." Plaintiff argues that the intent of the parties as shown by the words of the contract clearly reveals that more than one single sum transfer could be applied to this Policy. Thus, in the plaintiff's words, "multiple single sum transfers" are permitted under the Policy. Specifically, plaintiff contends that each of the eight transfers of funds by Heath should be considered a single sum transfer. As such, each transfer would have earned a 2%, not a 13%, commission rate. Plaintiff also states that even if the language of the Policy were ambiguous, extrinsic evidence points unmistakably to the conclusion that multiple single sum transfers are permissible. The defendant argues that the interpretation of a single sum transfer is inconsistent with the terms of the contract, and furthermore that the notion of multiple single sum transfers is not supported by extrinsic evidence.

The meaning of the terms of a contract is essentially a judicial function to be performed according to generally accepted canons of interpretation so that the purpose of the instrument may be given effect. *E.g., Sayble v. Feinman,* 76 Cal.App.3d 509, 512, 142 Cal.Rptr. 895, 897–98 (1978). The Agreement in this case has an explicit choice of law provision stating that it must be "construed in accordance with the laws of the State of California." Massachusetts courts would give effect to the choice of law provision in this case, *Steranko v. Inforex Inc.,* 5 Mass.App.Ct. 253, 260, 362 N.E.2d 222 (1977), and thus this Court, sitting in diversity, will do likewise. *See Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). If the meaning of the contract language is clear, the language of the contract will be followed. *Sayble,* 76 Cal.App.3d at 513, 142 Cal.Rptr. at 898. According to California case law, reference to extrinsic evidence should be made only where the contract is capable of two different reasonable interpretations. *United Teachers of Oakland v. Oakland Unified School District,* 75 Cal.App.3d 322, 330, 142 Cal.Rptr. 105, 110

(1977). Accordingly, we first turn to the contractual terms themselves.

The words used in a contract must be given their ordinary meaning, unless there is evidence that the parties intended to use them in a unique sense or to give words some different meaning. *Moss Development Company v. Geary,* 41 Cal.App.3d 1, 9, 115 Cal.Rptr. 736, 741 (1974) (citing Civ. Code, § 1644). As noted, plaintiff asserts that each of the eight Heath transfers was a single sum transfer and that the Agreement allows for multiple single sum transfers. Since the Policy states that "[a] single sum transfer is a lump sum" transferred to Great American, plaintiff's interpretation of the contractual terms must mean that each of the eight Heath transfers was by itself the transfer of a "lump sum." "Lump" means an aggregate; something entire, not divided into parts. *Webster's New Collegiate Dictionary* 684 (1977). Under plaintiff's interpretation, the term "lump sum" loses meaning: any number of transfer of funds by Heath from Home Life to Great American would be each the transfer of a lump sum. In this case Heath transferred $190,382.42 to Great American. This amount—by the plain meaning of the words—is the lump sum of the money transferred; each of the eight installment transfer of funds by Heath was not, separately, a lump sum. The language of the contract thus does not support plaintiff's argument that because each of the eight transfers were single sum transfers Murphy should have received a 2% commission rate on the Heath transfers.

This reading is consistent with the language in the Policy definition of a single sum transfer which uses the plural form "transfers." Multiple single sum transfer refers to "a plan," not a single "policy." One of the definitional requirements for single sum transfers under the policy is that the plan must allow single sum transfers. Another definitional requirement is that sum transferred be a "lump sum." It is admitted that the policy purchased from Great American by Heath is part of a plan under which single sum transfers could be

made. The Policy itself has the further requirement that for a fund transfer to be considered a single sum transfer it must be the transfer of a "lump sum." If the parties intended that any sum transferred from a qualified tax deferred plan be considered a single sum transfer, the limiting phrase "lump sum" would not be used. Having determined that eight—or whatever multiple number—of fund transfers totalling the full transfer amount cannot be each considered a transfer of a "lump sum," this Court rules that the Policy restricts the number of single sum transfers transferred from a tax deferred plan; the restriction is to "a lump sum," that is, restricted to one single sum transfer. Because the amount of each of the eight Heath transfers was not, separately, a lump sum, each of the eight Heath transfers could not be, separately, a single sum transfer.

Plaintiff points to the intent of the parties, insofar as it can be ascertained from the writing alone, Cal.Civil Code § 1639, as indicating that the Agreement should not be read to permit an agent to circumvent the lower 2% commission rate by breaking up Heath's fund transfer into installment transfers. *See Miller v. San Francisco Newspaper Agency*, 164 Cal.App.3d 315, 318, 210 Cal.Rptr. 159, 161 (1985) (court "must give force to the intent of the parties as expressed in their written words"). The language of the Policy does not clearly show the reason the lower 2% commission rate is paid for single sum transfers rather than the higher 13% commission rate. It is therefore not clear that Murphy's having Heath transfer funds to Great American in eight installments is a circumvention of any practice contemplated by the Agreement and Policy. The distinction between "transfer money" and "new money," referred to by plaintiff at hearing and in the memorandum and accompanying affidavits may or may not be the practice of the insurance industry. These distinctions, however, do not appear in the language of the Agreement and Policy.

There is another possible reading of the Policy different from the one pressed by defendant. Although not directly argued by plaintiff in its memorandum in support of its motion for summary judgment, this alternative reading is raised in plaintiff's complaint. The aggregate amount of the eight Heath transfers could be reasonably thought of as a lump sum. This lump sum was composed of funds transferred from a qualified tax deferred plan. Thus it could be argued that the $190,382.42 was "a lump sum transferred from a qualified tax deferred plan," and thus the receipt of the total $190,382.42 was a single sum transfer. Contrary to defendant's assertion, the policy does not clearly restrict a single sum transfer to that which is transferred in a lump sum. "Lump" can be reasonably interpreted as describing the nature of the sum and not the nature of the transfer. "Lump" in this context remains true to one of its dictionary definitions as "consisting of one whole: not divided into parts." *Webster's Third New International Dictionary* 1346 (1981). On the other hand, lump could be read as describing the nature of the transfer. *Black's Law Dictionary* (1979) defines "lump-sum distribution" as "[p]ayment of the entire amount due at one time rather than in installments," and defines "lump-sum payment" as "[a] single amount in contrast to installments." *Id.* at 855. The policy thus does not clearly restrict one single sum transfer to a single transfer of funds nor clearly allow it.

Faced with the ambiguous language and the resulting two different reasonable interpretations of the contract, this Court may consider extrinsic evidence to determine which of the two interpretations is correct. *United Teachers of Oakland v. Oakland Unified School District*, 75 Cal. App.3d 322, 330, 142 Cal.Rptr. 105, 110 (1977) (where there is an ambiguity, liability of the parties to the contract still depends upon the intention of the parties). Plaintiff states that extrinsic evidence shows that there are three purposes to the variable commission rates: 1) the variable rates reward the greater effort and expense incurred by an agent in procuring a

policy which is funded by "new money" (money not transferred from some other plan); 2) the variable rates discourage an agent from transferring client's funds solely for the sake of commission; and 3) the variable rates recognize the greater value to Great American of a policy funded by "new money." Plaintiff argues that defendant's interpretation of their contract would defeat the purposes of the variable rates of commission. Plaintiff accurately characterizes defendants position as allowing an agent to circumvent the 2% commission rate for single sum transfers by the client transferring, for example, $5,000 of a $200,000 distribution on day 1 and transferring the remaining $195,000 on day 2. By having the client transfer its funds in two installments, the agent would earn a much higher 13% commission. Plaintiff contends that this reading of the Agreement frustrates the three purposes of the variable rates of commission.

Defendant disagrees that extrinsic evidence establishes plaintiff's purported purposes of the variable commission rate as factually true. Defendant argues that an identical amount of effort and expense is incurred by an agent procuring a policy funded by a single sum transfer as for a policy funded by "new money." Defendant rejects the notion that a policy funded by "new money" is of greater value to Great American. Furthermore, defendant notes that a Great American client can withdraw a single sum transfer without penalty while the withdrawal of any other first year premium could result in a 20% penalty to the client. Defendant argues that the variable commission rate compensates Great American for this greater risk that a single sum transfer may be withdrawn without penalty. Obviously, the plaintiff's and defendant's disagreement over the purposes of the variable commission rate shows that there are material factual issues present. Moreover, plaintiff's presentation of extrinsic evidence sheds no light on whether the eight Heath transfers taken in aggregate constitute one single sum transfer. Summary judgment is therefore inappropriate.

This memorandum is filed in accordance with the Order of November 7, 1986 denying plaintiff's motion for summary judgment.