Filed 3/19/25  Shabani v. Burton CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH SHABANI, | B332280 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC696195) |
| v. | |
| CAL BURTON, as Trustee, etc., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui and Stuart M. Rice, Judges.  Affirmed.

Collins + Collins and James C. Jardin for Defendant and Appellant.

Law Offices of Saul Reiss, Saul Reiss and Fay Pugh for Plaintiff and Respondent.

This appeal arises out of a long-running dispute over real property subject to a trust. Settlor Julius Burton, Sr. (Julius, Sr.) died in 2006, leaving several parcels of real property in trust for the benefit of his son, Julius Burton, Jr. (Julius), to be managed by institutional trustee Regions Bank (Regions). In 2013, Regions entered into a contract to sell some of the parcels to respondent Joseph Shabani, subject to approval by Regions's internal trust committee and the Internal Revenue Service (IRS). Julius challenged the sale to Shabani, and the matter remained unresolved in the probate court for several years.

In 2018, Shabani filed the present action against the successor trustee, appellant Cal Burton, seeking specific performance of the sales contract or damages for breach of contract. Many more years of litigation followed, ultimately resulting in a 2023 grant of summary judgment for Shabani and an order that the sale be consummated under the terms of the 2013 sales contract.

On appeal, Burton urges that the trial court erred in granting Shabani's motion for summary judgment because (1) the trial court ruled on the summary judgment without first considering whether this matter should have been transferred to the probate court; (2) there were triable issues of material fact as to whether the conditions precedent to the sale had occurred; and (3) Shabani did not introduce any evidence of damages. We find no error, and thus we affirm the judgment.[1]

---

[1] The court previously deferred ruling on appellant's and respondent's requests for judicial notice, filed April 29, 2024 and September 9, 2024, respectively. We now grant both motions.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. The Julius and Christopher Burton family trust.

Julius Sr. and Christopher Burton created the Julius and Christopher Burton Family Trust (trust) in 1998. The Burtons' only child, Julius, was the trust's sole beneficiary. Among the trust's assets were various parcels of real property, including residential and commercial properties on Crenshaw Boulevard in Los Angeles (the Crenshaw properties or the properties).

After Christopher's death, Julius Sr. amended the trust to name AmSouth Bank as the successor trustee. Julius Sr. died in July 2006, and AmSouth Bank's successor-in-interest, Regions, became successor trustee. As trustee, Regions had the power to, among other things, "sell, lease, transfer, exchange, . . . or otherwise dispose of the Trust property."

## II. The probate action and sale to Shabani.

In December 2010, Julius filed a petition to remove Regions as trustee. Julius alleged that Regions had committed various breaches of duty, including failing to competently manage the trust's property and "failing to make any efforts to plan for or alleviate" estate tax liability. Regions opposed the petition and filed an accounting and petition to terminate the trust and distribute the trust's assets.[2]

---

[2] Regions's petition urged that the trust should be terminated because Regions had operated the trust entirely at its own expense and the value of the trust properties and the income generated from them did not justify a corporate fiduciary's continued administration.

3

In July 2013, while the petitions were pending, Regions entered into a written agreement (the purchase agreement) to sell the Crenshaw properties to Shabani for $775,000.  By its terms, the sale was subject to the following conditions:

"a.     An appraisal by the lender confirming the sale price.

"b.     Trust Committee approval.

"c.     IRS approval and release of the liens."

If the conditions precedent did not occur, "this transaction shall be null and void and the Buyer's deposit shall be returned immediately."

Julius's petition to remove Regions as trustee and Regions's petition to terminate the trust and distribute trust assets were tried to the probate court in August 2013.  In September 2013, the court issued an order finding that Regions did not unreasonably delay listing the Crenshaw properties for sale; Regions did not harm the trust by failing to maintain the Crenshaw properties; there was no causal connection between Regions's administration of the Crenshaw properties and the decline in the value of trust assets; and no surcharge of Regions was warranted.  The court further found that the trust should be terminated.  Finally, the court found that Regions was entitled to trustee and attorney fees, but it denied Regions's fee request without prejudice because it could not calculate reasonable fees on the record presented.  The court ordered Regions to "prepare an order approving [its] acts, report and account."

In April 2014, Regions and Shabani entered into an amendment to the purchase agreement reducing the purchase price to $685,000 and providing for close of escrow on or before May 30, 2014.  The amendment further stated:  "Only because of the order of the Superior Court of Los Angeles County

4

terminating the trust, the Trustee is seeking that court's approval of the sale. The Trustee, Regions Bank, remains the legal owner of the subject property, and the Trustee, Regions Bank, has the power to sell the subject property pursuant to the provisions of . . . the trust instrument."

Also in April 2014, Regions filed a "Petition to Instruct Trustees Re Sale of Trust Property, for Disbursement of Payment to IRS and Escrow of Remaining Sale Proceeds." Regions advised that the trust was largely insolvent due to outstanding liability for estate taxes and administration expenses, and had been ordered terminated by court order.[3] Regions further advised that it had entered into a contract to sell the Crenshaw properties to Shabani for $685,000, and it had obtained a commitment from the IRS to discharge the Crenshaw properties from the IRS's tax lien, conditioned on paying the IRS $280,000 from the sale proceeds. Regions asked the court to instruct it to consummate the sale to Shabani, to distribute $280,000 to the IRS, and to hold the balance of the sale proceeds in escrow pending a ruling on Regions's petition for fees.

Julius opposed the petition to instruct and requested an opportunity to refinance or sell the properties for a higher price. The court granted Julius's request and allowed him until June 20, 2014 to refinance the properties and pay the IRS lien, and until August 2014 to sell the properties. The court stated, however, that if Julius failed to refinance or sell the properties within the time provided, the properties would be immediately

---

[3]   Regions represented that the trust was liable to the IRS for estate taxes, penalties, and interest in the amount of about $817,000.

5

sold to Shabani for $685,000 without further order. Julius did not refinance or sell the properties within the time permitted by the court.

In March 2015, Shabani demanded that Regions complete the sale, and he threatened to file an action seeking specific performance, damages, and attorney fees if the sale was not consummated by April 15, 2015. The same month, Regions filed an amended petition asking the probate court to instruct it to consummate the sale to Shabani, to distribute funds to the IRS to satisfy the tax lien, and to hold the remaining funds in escrow.

A trial on Regions's amended petition was set for June 2016, continued to September 2017, and ultimately vacated to permit Regions and Julius to mediate. In November 2016, Regions and Julius entered into a settlement agreement and mutual release that provided, among other things, that Regions would remain trustee of the trust until the court appointed a successor trustee; Julius would negotiate directly with the IRS regarding a compromise of the estate's tax liability; Regions would receive $400,000 from the sale of other trust properties, at which time it would cease pursuing its petition to instruct and would dismiss its fee petition; and the parties would waive all claims against each other. The court approved the settlement agreement in December 2017.

In May 2018, Regions filed an ex parte application for an order scheduling a hearing on the petition to instruct Regions regarding the sale of the properties.

In June 2018, Julius Sr.'s nephew, Burton, was appointed the trust's successor trustee. Burton withdrew the petition to instruct, and in July 2018, the court denied the petition without prejudice "as withdrawn."

6

In July 2019, Burton filed a petition to invalidate the purchase and sale agreement.

### III. The present action; Shabani's motion for summary judgment; Burton's first appeal.

Shabani filed the present action against Regions and Burton in March 2018. The operative first amended complaint alleged that Regions failed to timely seek court permission to consummate the sale of the properties to Shabani, and Burton refused to consummate that sale after his appointment as successor trustee. The complaint asserted causes of action against Burton for breach of contract, breach of the implied covenant of good faith and fair dealing, and specific performance and damages, and against Regions for intentional misrepresentation, promissory fraud, negligent misrepresentation, and declaratory relief.

In May 2018, Regions filed notices of related cases in the present action and the probate case. Those notices were never ruled on, and Burton did not file related case notices or seek a ruling on Regions's notices.

Shabani filed a motion for summary judgment of his causes of action against Burton in May 2019. Shabani asserted that he had entered into an enforceable agreement with Regions to purchase the properties, and Burton, as successor trustee, was bound by that agreement. Nevertheless, Burton "has failed and refused to proceed with the consummation of the sales transaction with [Shabani] pursuant to the Agreement, despite demands by [Shabani]," and "has specifically stated that he does not intend to sell the Properties to [Shabani]." Shabani urged that he was entitled to judgment and specific performance of the purchase agreement.

7

Burton opposed the motion for summary judgment. He urged that the parties to the purchase agreement "contemplated and required approval by the Probate Court before consummating the sale" and "such approval has not yet been granted." Further, Burton had filed a petition asking the probate court to disapprove the sale, which petition was set for hearing in September 2019. Burton thus contended that the court "need not and should not rule on" Shabani's motion until the probate court ruled on Burton's petition.

The trial court granted Shabani's motion for summary judgment in July 2019. As to the first cause of action for breach of contract, the court found no triable issues of material fact, as follows:

"[Burton] claims to dispute that Regions had the power to enter into the agreement to sell the properties to [Shabani] because it had petitioned the court for termination of the trust prior to entering into the agreement with [Shabani]. However, this petition to terminate does not raise a dispute . . . because an order granting the petition to terminate states '2. All acts, transactions, sale and investment of Regions are ratified, confirmed and approved.' [Citation.] Thus, there is no triable issue of material fact as to whether Regions had the authority to enter into the agreement with [Shabani]. The undisputed facts establish the existence of a contract . . . .

"At the hearing on [Regions's] petition to instruct on May 22, 2014, beneficiary made representations regarding his ability to refinance the properties and his desire to search for additional potential buyers. [Citation.] The probate court allowed the beneficiary the opportunity to either refinance the properties or attempt to sell them, and indicated that if the

8

beneficiary was unable to refinance the properties and maintain ownership, the properties 'would be immediately sold to Joseph Shabani for the sum of $685,000 without further order.' [Citation.]  Beneficiary did not provide the required refinancing paperwork by the probate court's deadline.  [Citation.]  [¶] . . . [¶]

"The only evidence [Burton] cites to support his claimed dispute as to whether he is bound by the terms of the agreement is the petition to invalidate the agreement, which he filed in probate court on the day his opposition to this motion for summary judgment was due.  [Citation.]  This is insufficient to raise a material triable issue of fact as to whether Burton is bound by the agreement.  [Shabani] correctly observes that defendant's petition to invalidate itself presumes that the agreement is valid.  The petition to invalidate is a last-minute attempt to raise a dispute where there is none.

"[Burton] also argues that plaintiff agreed that the agreement was subject to court approval.  However, [Burton] fails to point to any provision in the agreement that indicates the agreement itself is subject to court approval.  The only mention of court approval is in the contingency removal and amendment to the agreement, which indicate 'Only because of the order of the Superior Court of Los Angeles County terminating the trust, the Trustee [Regions] is seeking that court's approval of the sale.' [Citation.]  This term does not make the agreement subject to the court's approval, but merely indicates that Regions was 'seeking the court's approval of the sale.' [Citation.]  Furthermore, on October 22, 2013—after Regions had entered into the agreement with [Shabani]—the court ordered that [Regions's] 'acts, transactions, sales and investments . . . are ratified, confirmed and approved.' [Citation.]  Thus, there is no dispute that the

9

court approved the agreement, despite there being no indication that the agreement was conditioned upon the court's approval. [¶] Finally, there is no triable issue of fact as to whether defendant suffered damage in the form of being deprived [of] the property he is entitled to."

The court also found no triable issues of material fact as to the second cause of action for breach of the implied covenant of good faith and fair dealing. The court explained that Burton breached the implied covenant when he withdrew the petition to instruct regarding the sale of the properties because "[t]his conduct, although not expressly prohibited by the terms of the agreement, frustrated [Shabani's] rights to the benefits of the contract."

Finally, the court found no triable issues as to the third cause of action for specific performance. The court explained: " 'Specific performance regarding real property will be granted as a matter of course unless some other equitable reason for denial is shown. (See Civ. Code, § 3384.)' (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743.) 'The party seeking enforcement does not have to show inadequacy of the legal remedy. Instead, it is defendant's burden to prove damages constitute an adequate remedy.' (*Id*.) [¶] Defendant has not met his burden of raising any triable issue of material fact as to whether damages constitute an adequate remedy. Indeed, he does not even address the issue of specific performance in his two-page opposition to this motion."

The court entered a "partial judgment" for Shabani and against Burton in September 2019. The partial judgment found for Shabani on each of the causes of action against Burton and ordered an escrow to be opened and title to the properties

10

transferred to Shabani. It further provided that if Burton was unable to convey marketable title to the properties, "a trial will be held on the issue of monetary damages payable to [Shabani] and a further judgment will be rendered for the amount of damages determined at such trial."

Burton filed a notice of appeal of the partial judgment. This court dismissed the appeal in March 2021, concluding that the partial judgment was not appealable because it did not fully resolve the claims between Shabani and Burton. Specifically, we noted that the partial judgment did not resolve Shabani's claim for damages, and the specific performance portion of the judgment contained contingencies and expressly contemplated further proceedings to consider whether Burton had adequately complied with those contingencies and to adjudicate occupancy rights.

## IV. Subsequent proceedings; the present appeal.

In June 2022, Shabani and Regions entered into a settlement agreement pursuant to which Regions agreed to pay Shabani $150,000 in full settlement of his claims against Regions. In August 2022, the trial court entered a finding that the settlement was made in good faith, and we affirmed the order.

In March 2023, Shabani notified the court that he elected the remedy of specific performance and would forgo any damages claim. Following a hearing, the court concluded that in light of Shabani's election of remedies, no issues remained for trial. In June 2023, the trial court entered a judgment for Shabani that granted him specific performance of the purchase agreement and title to the Crenshaw properties, directed Shabani to deposit

11

$685,000, less deposit paid, into escrow, and directed Burton to deliver into escrow the grant deeds to the properties.

Burton moved for a new trial and judgment notwithstanding the verdict, which Shabani opposed. The trial court denied both motions. Burton timely appealed from the judgment.

## DISCUSSION

Burton contends that the trial court abused its discretion by ruling on Shabani's motion for summary judgment without first obtaining a ruling from the probate court on the notice of related case. Burton further contends that the trial court erred in granting Shabani's motion for summary judgment because there were triable issues of material fact as to whether the conditions precedent to enforcing the purchase agreement— namely, trust committee approval and probate court approval— were satisfied, and whether Shabani suffered monetary damages. None of these contentions has merit, as we discuss.

## I.    Legal standards and standard of review.

Summary judgment is proper if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to prevail on a cause of action as a matter of law. (Code. Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant moving for summary judgment has the initial burden to show the plaintiff cannot establish one or more elements of the challenged cause of action or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) A defendant meets its burden by presenting affirmative evidence that negates an essential element of the plaintiff's claim, or by submitting

12

evidence that demonstrates "the plaintiff does not possess, and cannot reasonably obtain, needed evidence" to prove an essential element of the plaintiff's claim. (*Aguilar*, at p. 855.)

If the defendant makes a sufficient showing, the burden then shifts to the plaintiff to demonstrate a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

We review the grant of summary judgment de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We review the trial court's decision to rule on the summary judgment without first obtaining a ruling on the related case notices for an abuse of discretion. (See, e.g., *Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 160 [abuse of discretion standard applied to order denying continuance of summary judgment hearing]; *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 916, fn. 6 [rulings implicating courtroom management reviewed for an abuse of discretion].)

## II.  Burton forfeited his contention that the trial court abused its discretion by granting Shabani's motion for summary judgment without first obtaining a ruling on the related case notice.

Preliminarily, we consider Burton's contention that the trial court abused its discretion by ruling on Shabani's motion for summary judgment without obtaining a ruling on the related case notice. The claim lacks merit.

13

California Rules of Court,[4] rule 3.300(b) provides that whenever a party in a civil action knows that the action or proceeding is related to another action or proceeding, the party must serve and file a notice of related case. A party is not required to serve and file a related case notice if another party has already done so. (Rule 3.300(k).) If one of the cases listed in the notice is a probate case, the presiding judge must determine whether the cases should be ordered related and, if so, to which judge or department they should be assigned. (Rule 3.300(h)(1)(C).) If a case is not ordered related under this rule, "that case will remain assigned to the court, judge, or department where it was pending at the time of the filing and service of the Notice of Related Case." (Rule 3.300(j).)

Here, Regions filed related case notices in both the present matter and the probate matter in May 2018. The notices were never ruled on, and the parties filed pleadings and motions in the present matter between May 2018 and July 2019. Burton did not file a related case notice in either matter.[5] The inaction on the related cases notices was brought to the trial court's attention at the outset of the summary judgment hearing on July 31, 2019; the trial court noted the omission, heard argument on the motion

---

[4] All subsequent rule references are to the California Rules of Court.

[5] Burton suggests he had no duty or ability to file a related case notice because he was "not a party" when Regions filed its own notice. In fact, the duty to file a notice of related case "is a continuing duty" that applies "*whenever* a party learns of a related action or proceeding." (Rule 3.300(f), italics added.)

14

for summary judgment, and then adopted its tentative ruling granting the motion.

On appeal, Burton urges that the trial court abused its discretion by "fail[ing] to consider the implications of the Notice of Related Case before ruling on Mr. Shabani's motion for summary judgment." We conclude that Burton failed to preserve this issue for appeal because he did not timely raise it below. While Burton urges that the trial court should not have ruled on the motion for summary judgment without first obtaining a ruling on the related case notice, there is no evidence that Burton took any action to secure such a ruling at any time before he received a tentative ruling granting Shabani's motion for summary judgment. To the contrary, he failed to either file his own related case motion or to file a motion to have the cases related, as the Rules of Court permitted him to do. (See Rule 3.300(h)(1)(D) ["In the event that any of the cases listed in the notice are not ordered related . . . , any party in any of the cases listed in the notice may file a motion to have the cases related"].) Burton also failed to urge in his opposition to summary judgment that the summary judgment motion should be decided by the probate court, apparently raising the issue for the first time at the summary judgment hearing.

" 'It is axiomatic that a party may not complain on appeal of rulings to which it acquiesced in the lower court.' " (*Vascos Excavation Group LLC v. Gold* (2022) 87 Cal.App.5th 842, 856; see also *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [" 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal."]; *Cushman v. Cushman* (1960) 178 Cal.App.2d 492, 498 ["one cannot on appeal complain of rulings assented to or

15

acquiesced in by him in the court below"].) Because Burton did not timely seek to have the present case transferred to the probate court, and because he failed to assert in opposition to Burton's motion for summary judgment that summary judgment should be denied because no ruling had issued on the related case notice, Burton forfeited any claim of error.

## III. There are no triable issues of material fact as to whether the conditions precedent to enforcing the purchase agreement were satisfied.

Burton next contends that the trial court erred in granting Shabani's motion for summary judgment because there were triable issues of material fact as to whether conditions precedent to enforcing the purchase agreement—namely, approval by Regions's trust committee and by the probate court—were satisfied. We find no error.[6]

---

[6] "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) A party's failure to perform a condition precedent will preclude an action for breach of contract. (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 592; *Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1192.) "Where one party's obligation is dependent on the prior proper performance of the other party, and that other party does not perform, the obligation is excused." (*Alki Partners*, at p. 1192.)

16

## A. The undisputed evidence established that Regions's trust committee approved the sale of the Crenshaw properties to Shabani.

As noted above, the purchase agreement provided that the sale of the Crenshaw properties to Shabani was contingent on Regions's trust committee's approval of the sale. Burton contends that the trial court erred in granting summary judgment because there were triable issues as to whether such approval was given—that is, whether Regions's trust committee approved the sale of the Crenshaw properties to Shabani.

We note as a preliminary matter that Burton did not raise this issue in the trial court in opposition to Shabani's motion for summary judgment. The contention, therefore, is forfeited. "Though this court is bound to determine whether defendants met their threshold summary judgment burden independently from the moving and opposing papers, *we are not obliged to consider arguments or theories, including assertions as to deficiencies in defendants' evidence, that were not advanced by plaintiffs in the trial court*. 'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will . . . not be considered if it is raised for the first time on appeal. . . .' 'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' (*Ernst v. Searle* (1933) 218 Cal. 233, 240–241.)" (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676, italics added; see also *Kime v. Dignity Health, Inc.* (2024) 101 Cal.App.5th 708, 721 [citing *DiCola*].)

17

In any event, Burton's claim lacks merit. Paragraph 41 of the purchase agreement states that the sale is subject to three conditions precedent—the lender's appraisal confirming the purchase price, trust committee approval, and IRS approval and release of the liens—and it provided that if "all three of these instances do not occur, this transaction shall be null and void and the Buyer's deposit shall be returned immediately." Neither Regions nor Shabani ever suggested that any of the three conditions had not occurred, that Shabani was entitled to a return of his deposit, or that the transaction was void. To the contrary, Shabani submitted evidence below that both Regions and Shabani executed documents removing all sale contingencies; Regions represented that it was authorized to sell the properties and it "intended to sell the properties to [Shabani] pursuant to the [purchase agreement]"; both parties repeatedly asked the trial and probate courts to permit the sale to proceed; and Regions's counsel represented to the probate court in May 2014 that Regions and Shabani had "cleared all the contingencies. Everything [is] done and ready to go . . . ." All of this evidence suggested that Regions's internal trust committee had approved the purchase agreement because but for such approval, Regions could not have executed the contingency removal or represented to Shabani that it was authorized to proceed with the sale.

Nothing in Burton's appellate briefs raises a triable issue of fact as to whether Regions's trust committee approved the sale. First, Burton urges that Shabani's verified first amended complaint alleged that Regions "did not intend to sell the Properties to [Shabani]." But even if, as Burton suggests, this allegation is a judicial admission that cannot be controverted by the pleader, on its face it does not address trust committee

18

approval.  It thus is irrelevant to the grant of summary judgment.

Second, Burton suggests that Regions's course of conduct—namely, its repeated delays in consummating the sale pending probate court approval—"provides ample evidence that Regions's 'Trust Committee' had *not* 'approved' the sale."  Not so.  The April 2014 amendment to the purchase agreement and all of Regions's correspondence with Shabani stated that Regions was seeking court approval of the sale "[o]nly because of the order of the Superior Court of Los Angeles County terminating the trust." Neither the amendment nor any of the parties' correspondence ever suggested that the sale was not moving ahead because the trust committee had not approved the sale.

Finally, Burton asserts that Regions's petition to approve its settlement agreement with Burton represented that "no decision regarding the Purchase Agreement has been made by Regions," which Burton urges is "direct evidence" that the condition precedent of trust committee approval had not been satisfied.  (Italics omitted.)  In fact, Regions's petition says only that a decision with respect to the pending sale "is not part of the proposed settlement, and any decisions with respect to that pending sales contract will be the responsibility of [Burton]."  In the context of Julius's and Burton's ongoing efforts to stop the sale of the properties to Shabani, the only reasonable construction of this statement is that the consummation of the sale was being left to the successor trustee—*not* that Regions had failed to secure trust committee approval.

For all the foregoing reasons, therefore, there were no triable issues as to Regions's trust committee's approval of the sale to Shabani.

19

### B. The undisputed evidence established that court approval was not a term of the sales agreement.

Burton next contends that probate court approval of the sale to Shabani was a condition precedent to enforcing the purchase agreement. Because such approval was never given, Burton urges, the trial court erred in granting summary judgment on the breach of contract claims.

" 'When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is "reasonably susceptible" to the interpretation urged by the party. If it is not, the case is over. (*Consolidated World Investments, Inc. v. Lido Preferred, Ltd.* (1992) 9 Cal.App.4th 373, 379.) If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean? (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) [¶] Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself (*United Teachers of Oakland v. Oakland Unified Sch. Dist.* (1977) 75 Cal.App.3d 322, 330) or from extrinsic evidence of the parties' intent (*Winet v. Price, supra*, 4 Cal.App.4th at p. 1165).' " (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.)

When the meaning of the language "is reasonably susceptible to either [party's] interpretation," the court also may consider extrinsic evidence, "including the surrounding circumstances of the negotiations; the contract's object, nature, and subject matter; and the parties' subsequent conduct." (*VFLA Eventco, LLC v. William Morris Endeavor Entertainment, LLC* (2024) 100 Cal.App.5th 287, 301.) However, extrinsic evidence is

20

not admissible to "flatly contradict the express terms of the agreement." (*Winet v. Price, supra*, 4 Cal.App.4th at p. 1167; see also *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, *supra*, 9 Cal.App.4th at p. 379 [contract language is not reasonably susceptible to a reading that contradicts the contract's express terms].)

As noted above, the purchase agreement executed by Regions and Shabani in July 2013 contained three conditions precedent to the sale: the lender's appraisal confirming the purchase price, trust committee approval, and IRS approval and release of the liens. Nowhere in its plain language did the July 2013 purchase agreement refer to court approval. Subsequently, in April 2014, the parties executed an amendment to the purchase agreement that reduced the purchase price, made representations regarding occupancy, provided that Regions would deliver the property free and clear of any liens, taxes, or encumbrances, and extended the date on which escrow would close. The amendment further stated: "Only because of the order of the Superior Court of Los Angeles County terminating the trust, [Regions] is seeking that court's approval of the sale. The Trustee, Regions Bank, remains the legal owner of the subject property, and the Trustee, Regions Bank, has the power to sell the subject property pursuant to the provisions of Article Eight Section 3n of the trust instrument."

Burton asserts that the quoted paragraph of the amendment gave rise to a triable issue of fact as to whether probate court approval was a condition precedent to enforcing the

purchase agreement.[7]  We do not agree.  On its face, the amendment states only that Regions was seeking probate court approval—presumably, to shield it from liability to Julius, who opposed the sale.  The amendment nowhere states that the parties had conditioned the sale on such approval.  Indeed, the amendment expressly says to the contrary, stating that Regions "has the power to sell the subject property."

Burton urges that although the purchase agreement does not expressly require probate court approval of the sale, the conduct of the parties created triable issues of fact regarding Regions's authority to sell the Crenshaw properties without probate court approval.  Specifically, Burton notes that Regions "repeatedly delayed the sale for the express purpose of obtaining Probate Court approval" and "refused to proceed with the sale without Probate Court approval."  Thus, Burton urges, "this evidence creates a disputed issue of fact regarding Regions's authority to sell [the properties] without Probate Court Approval."  But as we have said, extrinsic evidence, including the conduct of the parties, cannot be relied on to support a meaning of a contract to which its language is not reasonably susceptible.  (See, e.g., *Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exchange* (2012) 212 Cal.App.4th 69, 76 [rejecting interpretation of property insurance policy suggested by extrinsic evidence because such interpretation was inconsistent with policy

---

[7]  Curiously, Burton also asserts in his appellant's opening brief that "Regions never informed Mr. Shabani that Regions would not proceed with the sale without approval by the Probate Court."  This assertion fatally undermines Burton's assertion that probate court approval was a condition precedent to the sale pursuant to the terms of the purchase agreement.

language].) Because the amendment cannot reasonably be read to say that probate court approval was a condition precedent to a sale, the parties' conduct is irrelevant.[8]

## IV. There are no triable issues as to damages.

Burton contends finally that the trial court erred in granting summary judgment for Shabani because Shabani "failed to offer any evidence of monetary damages." We do not agree.

Specific performance and damages are alternative remedies for breach of contract. (*Rogers v. Davis* (1994) 28 Cal.App.4th 1215, 1218, fn. 2, citing 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 732, at pp. 180–181.) To obtain specific performance after a breach of contract, a plaintiff must generally prove, among other things, the inadequacy of his legal remedy. (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472.) In the case of a contract for sale of land, however, a presumption exists pursuant to Civil Code section 3387 that a remedy at law is

---

[8] We note that Regions's power to sell the Crenshaw properties was governed by the terms of the trust document and by California law governing trusts, not by the purchase agreement. (See, e.g., *Citrus El Dorado, LLC v. Chicago Title Co.* (2019) 32 Cal.App.5th 943, 948 [" ' "The rights and powers of trustees . . . have long been regarded as strictly limited and defined by the contract of the parties and the statutes" ' "].) Accordingly, the terms of the purchase agreement are not dispositive of whether Regions *in fact* had the power to sell the properties without court approval. But even if Regions were required by the terms of the trust to obtain probate court approval before selling the Crenshaw properties—a conclusion we do not reach—that would not make probate court approval a condition precedent *to performance under the purchase agreement*.

inadequate.  (Civ. Code, § 3387 ["It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation"]; *Ellison v. Ventura Port District* (1978) 80 Cal.App.3d 574, 579–580 ["A presumption exists that the remedy at law is inadequate when the contract is for the sale of land"].)  Thus, following a seller's refusal to convey property, the nondefaulting buyer may elect either specific performance or damages as a remedy for breach of contract.  (*Al-Husry v. Nilsen Farms Mini-Market, Inc.* (1994) 25 Cal.App.4th 641, 650–651; *Abrams v. Motter* (1970) 3 Cal.App.3d 828, 847 ["When a material breach of . . . a contract [to purchase land] occurs, the innocent party has his election between an action at law for damages, an equitable action for specific performance, and an action for rescission of the contract"].)

In the present case, the purchase agreement concerned the sale of real property, and thus the remedy of specific performance was presumptively available on Shabani's showing of breach of contract.  Because Shabani elected the remedy of specific performance and waived damages, he was not required to introduce evidence concerning the amount of his damages.  The trial court did not err by so concluding.

24

## DISPOSITION

The judgment is affirmed.  Respondent Shabani is awarded his appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

HANASONO, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25